SWINDLE *v.* THORNTON.

5-1592

316 S. W. 2d 202

Opinion delivered September 29, 1958.

*Witt & Witt, Nabors Shaw* and *Donald Poe,* for appellant.

*W. G. Spencer* and *Donn G. Allison,* for appellee.

SAM ROBINSON, Associate Justice.  The appellants, Sam Swindle and Elizabeth Swindle, brother and sister, committed an assault and battery upon the appellee, M. O. Thornton, by beating him in the face with a rock and cutting him about the face and on the arm with a pocketknife.  Thornton filed suit against the Swindles for damages due to the injuries inflicted upon him.  The trial resulted in a judgment in favor of Thornton in the sum of $1,500, and the Swindles have appealed.

Mr. Thornton is a resident engineer for the State Highway Department.  It was his duty in connection with his work to see that a highway which was being constructed by the McGeorge Construction Company in Montgomery County and which passed in front of the Swindle home was built according to plans and specifications.  Incidentally, Mr. Thornton had nothing to do with preparing the plans; it was merely his duty to see that the plans were followed.

The new construction of the highway lowered it to some extent in front of the Swindle home, and Elizabeth Swindle could not see the occupants of automobiles that traveled in front of her house, as she had in the past; she could see only the tops of the automobiles. In lowering the grade of the road it was desirable that roads leading onto the Swindle property be worked and graded for the convenience of those using the property. In this connection Mr. Thornton obtained an easement signed by Sam Swindle authorizing the work to be done on the Swindle property.  A portion of the driveway that needed to be worked extended beyond the highway right of way.  However, it developed that Sam Swindle did not actually own the property involved.  It is owned by his sister, Elizabeth Swindle, and it is contended that Elizabeth Swindle did not authorize Sam Swindle to sign

the easement, although the work to be done in connection with the driveway was for the benefit of the property owner.

Early the next morning after the easement had been signed, Sam Swindle made a trip to see a lawyer, and the conclusion was reached that the easement was not valid. From the evidence it can be determined that the Swindles were extremely angry about the grade of the road having been changed, and it appears that they attributed this change to Mr. Thornton. Elizabeth Swindle made threats that she was going to kill Mr. Thornton. Both of the Swindles were in a very ugly mood when Mr. Thornton, in going about his work, drove up in front of the Swindle house. He stopped his car in the public road and got out. At that time he did not know that the Swindles were angry. He thought that the new situation in connection with the road was entirely satisfactory with everybody. According to the evidence, which the jury had a right to believe, both Elizabeth and Sam Swindle immediately made an attack on Mr. Thornton when he got out of his automobile, Elizabeth Swindle beating him in the face with a rock and Sam Swindle stabbing and slashing him with a knife. The Swindles contended at the trial that without any provocation Mr. Thornton had made an attack upon Sam Swindle while Sam Swindle was standing on private property belonging to his sister. Obviously the jury did not believe this version of the affair.

First, it is argued that instruction No. 4, given at the request of Thornton, is a binding instruction that ignores certain defenses set forth by the Swindles and is therefore fatally defective. The instruction is as follows: ''You are instructed that every person is the sole custodian of his person, and no one has the right to touch it unlicensed, and that any unlawful touching of the person of another constitutes an assault and battery. Therefore, if you believe from the preponderance of the evidence in this case that the defendants, Saul Swindle, Sam Swindle and Elizabeth Swindle, or any of them, did make an assault and battery upon the person of

M. O. Thornton by striking, beating, bruising, cutting, or otherwise injuring the person of the said M. O. Thornton with their fists, rocks, a knife, or any other instruments or things, then your verdict should be for the plaintiff as against those persons that you find from a preponderance of the evidence actually made an assault and battery on M. O. Thornton, for such an amount as you find he is entitled to." (There was no judgment against another brother, Saul Swindle.)

By instruction No. 2 the court told the jury that "an assault and battery is the unlawful striking or beating the person of another".

At the request of the Swindles the court told the jury: "The court instructs the jury that every person has a right to complete and perfect immunity from hostile assaults that threaten danger to his or her person — a right to live in society without being unnecessarily or wrongfully put in fear of personal harm. And an assault is an attempt with unlawful force to inflict bodily injury upon another, accompanied with the apparent present ability to give effect to the attempt if not prevented." And, further:

"If a person wilfully trespasses upon the premises of another, and while so trespassing assaults the owner thereof, and the owner, while defending his or her person from such assault, inflicts an injury upon the party thus making such assault, the party thus injured cannot recover damages for the injury so received."

It is appellants' contention that instruction No. 4 given at the request of appellee ignores the defense that Thornton, first, assaulted the Swindles, and, second, that Thornton trespassed upon the Swindles' property. But before Thornton could recover under this instruction the jury had to find that the Swindles made an unlawful attack upon him and that their action in cutting and beating Thornton constituted an assault and battery. The jury was fully informed as to what constituted an assault and battery, and since under instruction No. 4 the jury first had to find that an assault and battery was com-

mitted upon Thornton before he could recover, no element of the defense was left out of the instruction.

Appellants contend that the trial court erred in permitting Thornton to testify that as part of the damages he sustained he had used fifty days of accumulated sick leave valued at $18.50 per day, which was his regular salary. Appellee was entitled to show all the loss he had sustained, and even though he was compensated to some extent through workmen's compensation, this could be of no benefit to the appellants. Ark. Stat. § 81-1340.

Appellants also complain that part of instruction No. 6 given at the request of appellee authorizes the jury to find for the appellee for loss of earnings in the future, if any. It is contended that there is no evidence to sustain an instruction on future earnings. Thornton received severe injuries. In fact, he nearly bled to death. One gash on his arm was 4½ or 5 inches long, and cut the large vein and the full muscle. Appellee testified that he has not been free of a headache since the attack upon him; that he is nervous and can't do a day's work like he could before; that he cannot sleep and has to take treatment for the nervous condition and lack of rest; and Dr. G. T. Stewart testified that Thornton is still under his care. The evidence justifies the instruction.

Affirmed.