(No. 41454.—

JOHN SWEENEY, Appellee, *vs.* THE MAX A. R. MATTHEWS & COMPANY, Appellant.

*Opinion filed September 22, 1970.*

HOWARD, FRENCH AND HEALY, of Chicago, (RICHARD G. FRENCH, of counsel,) for appellant.

GEORGE W. ANGERSTEIN and SIDNEY Z. KARASIK, both of Chicago, for appellee.

Mr. JUSTICE WARD delivered the opinion of the court:

This court granted the defendant, Max A. R. Matthews & Company, leave to appeal from a judgment of the Appellate Court for the First District, which had affirmed a judgment of the circuit court of Cook County. The circuit court had entered a judgment for the plaintiff following a jury verdict for $45,000 in his favor.

The plaintiff, who was employed as a carpenter by Hartman-Sanders Company, was injured when using special purpose "concrete" nails which had been purchased from the defendant. When he struck the nails with a ham-

mer, the heads of the first several broke off and were thrown across the room in which he was working. As he struck either the fourth or fifth nail, it shattered and a piece of it struck his left eye, causing serious injury.

A comprehensive statement of facts and issues before the appellate court appears in the opinion of that court. (94 Ill. App. 2d 6.) Several questions presented in the appellate court have not been advanced by the defendant here, and therefore will not be considered in this opinion. Too, theories of liability, based on negligence and warranties by a seller were raised in the trial court, but on appeal the question has been limited to the tort doctrine of strict liability as it applies to the seller of a defective product.

Contributory negligence is not a bar to recovery in strict product liability tort action in Illinois. (*Brown* v. *Williams Manufacturing Co.,* 45 Ill.2d 418.) However, while, as stated in *Brown,* it is not necessary that a plaintiff in such an action plead and prove his exercise of due care, recovery will be barred if the defendant, by means of an affirmative defense, can show that the plaintiff knew the product was in a dangerous condition and proceeded to use the product in disregard of this known danger. While this court has recognized that whether there was such an assumption of risk by a plaintiff in a given case may be determined largely by subjective evidence, it has made it clear that the trier of fact is not required to accept a plaintiff's account of the incident concerned. In determining this question a trier of fact may consider such factors as "the user's age, experience, knowledge and understanding, as well as the obviousness of the defect and the danger it poses, * * *." *Brown* v. *Williams Manufacturing Co.,* 45 Ill.2d at 431.

Against this background we consider now the defendant's contention, based on a claimed assumption of risk by the plaintiff, that the trial court erred in refusing to grant its motion for a directed verdict, which was made at the close of all the evidence and which was renewed in the post-

trial motions. The appellate court (at 94 Ill. App. 2d 6, 16-17) described the evidence on the question of an assumption of risk by the plaintiff. The court said:

"* * * The plaintiff had used concrete nails prior to the accident and knew that they were hardened nails which would not bend like ordinary ones. The day before he was injured he had been sent to purchase hardened square-cut nails; he found them unsatisfactory because they would bend and not penetrate mortar, so he returned them. However, he continued to use the concrete nails despite the fact that they too were unsatisfactory. He testified that as he was striking the nails the thought entered his mind that either he was doing something wrong or that something was wrong with the nails themselves. Nevertheless, this did not deter him. Nor did he stop to put on safety glasses— although Hartman-Sanders had instructed its carpenters to use them when hammering concrete nails. While the glasses were not at hand, they were available at the employer's nearby place of business. Another carpenter was nailing furring strips in the same room with the plaintiff. He started using the nails before the plaintiff did and testified that every second nail he struck broke and flew over the room.

"The plaintiff's apparent indifference to consequences might have justified a directed verdict against him were it not for other factors which made his conduct a jury question. He was nineteen years of age and had worked as a carpenter for only a short time. Although he held a journeyman's card he had never worked as an apprentice and had no experience as a carpenter before being employed by Hartman-Sanders. He had used concrete nails before the accident but none had broken and he thought they could take more abuse than other nails. He and the other carpenter were working on opposite walls; his own assignments took him out of the room much of the time and he was unaware that the other man was experiencing trouble with the nails. He said that as far as he knew safety glasses were

not required. He never saw the carpenters with whom he worked use them and the older, more experienced carpenter working in the room with him was not using them the afternoon of the accident."

We do not consider that this evidence shows clearly an assumption of the risk by the plaintiff which should have barred a recovery. Applying the standard we set in *Pedrick* v. *Peoria and Eastern Railroad Co.*, 37 Ill.2d 494, we cannot say that, viewing the evidence in its totality, it so overwhelmingly favored the defendant that a jury finding for the plaintiff on this issue could never stand. Accordingly, the trial court did not err in denying the defendant's motion for a directed verdict.

The defendant also claims error by the trial court because of its refusal to give the jury either of two instructions which the defendant offered on the issue of assumption of risk. The tendered instructions were modified versions of Illinois Pattern Instruction 13.01 and Illinois Pattern Instruction 13.02, and, the defendant says, correctly expressed what he had to show to establish here the defense of assumption of risk.

The first offered instruction, based on Illinois Pattern Instruction 13.01, stated: "First, that the dangers involved were the dangers that ordinarily accompany the activities undertaken by the plaintiff. Second, that the plaintiff knew these dangers existed and realized the possibility of injuries from them or in the exercise of ordinary care would have known the dangers existed and realized the possibility of injury from them and entered into the activity voluntarily. Third, that some one or more of these dangers were the cause of plaintiff's alleged injuries."

The second proposed instruction was: "First, that the plaintiff was doing work of a kind that would ordinarily involve certain dangers. Second, that the plaintiff knew these dangers existed and realized the possibility of injury from them, or in the exercise of ordinary care would have

known the dangers existed and realized the possibility of injury from them, and assumed the work voluntarily. Third, that some one or more of these dangers caused the plaintiff's injuries."

The Committee Comments to the pattern instructions, on which the offered instructions of the defendant were based, indicate that their use was to be limited to cases involving a master-servant relationship and certain other types of contractual relations. (See also *Barrett* v. *Fritz,* 42 Ill.2d 529.) The instructions as offered by the defendant were directions applicable only to master-servant or the other types of relationship referred to in the Committee Comments. For example, as the appellate court pointed out in its supplemental opinion (94 Ill. App. 2d 28), the offered instructions referred to dangers which would "ordinarily" accompany the activities undertaken by the plaintiff. The foundation of a product-defect cause of action based on strict liability in tort is that the plaintiff's injury resulted from a condition of the product which rendered it "unreasonably" dangerous. (See *Suvada* v. *White Motor Co.,* 32 Ill.2d 612; *Dunham* v. *Vaughan & Bushnell Mfg. Co.,* 42 Ill.2d 339.) It cannot be said that the danger here was one that "ordinarily" accompanied the plaintiff in the performance of his work. We thus conclude that the instructions tendered by the defendant on the issue of assumption of risk were misleading and incorrect. The defendant was certainly entitled to have the jury properly instructed on this issue (*Brown* v. *Williams Mfg. Co.,* 45 Ill.2d 418), but just as clearly the trial court's refusal to give incorrect instructions was not error. See *Anderson* v. *Inter-State Business Men's Accident Ass'n,* 354 Ill. 538, 550.

The final contention of the defendant is that the trial court improperly restricted the cross-examination of a witness for the plaintiff. The witness was employed as an investigator by the insurance company which carried workmen's compensation insurance for the plaintiff's employer.

His testimony was important in the laying of a foundation for the introduction into evidence of the defective nails. Under the Workmen's Compensation Act compensation paid by an employer to an injured employee must be repaid by the employee out of any recovery obtained from a third party. (Ill. Rev. Stat. 1969, ch. 48, par. 138.5(b).) Any recoupment by an employer through subrogation would ultimately be paid to the insurance company which actually made the compensation payments. Thus, here, if the plaintiff, who had been paid compensation, recovered from the defendant, the insurance company which employed the investigator would to that limited extent participate in the recovery.

The defendant on cross-examination sought to show that the investigator's employer, the insurance company, had this interest in the outcome of the lawsuit and that the investigator had a responsibility to protect that interest. As a general rule, it is, of course, proper to show that a witness or his employer has an interest in the result of the litigation. (Ill. Rev. Stat. 1969, ch. 51, par. 1; 2 Wigmore, Evidence (3d ed. 1940) sec. 966.) But it is also generally accepted that evidence of workmen's compensation payments may be properly excluded in an action by an injured employee against a third party. (*Bryntesen* v. *Carroll Construction Co.*, 27 Ill.2d 566, and cases cited.) Both irrelevance and prejudice to the plaintiff's case have been offered as reasons for the exclusion of such evidence. (See *Mangan* v. *Brodrick & Bascom Rope Co.*, (7th cir. 1965), 351 F.2d 24, 28; *O'Brien* v. *Chicago City Railway Co.*, 305 Ill. 244, 262-263.) Apparently attempting to accommodate both lines of decision, the trial court held that the defendant could show that the insurance company which employed the investigator-witness had an interest in the case adverse to that of the defendant, but that the exact nature of the interest could not be shown to the jury. The court thus permitted disclosure of the interest of the witness and his employer

in the outcome of the lawsuit. Prejudice to the plaintiff, which could have occurred if specific disclosure of the compensation benefits were allowed, was avoided by the court's ruling. The scope of cross-examination resides within the sound discretion of the trial court and we cannot properly upset the exercise of that discretion unless there has been an abuse of discretion. (See *Dickeson* v. *Baltimore & Chicago Terminal RR. Co.*, 73 Ill. App. 2d 5, affirmed 42 Ill.2d 103; *Waukegan Park District* v. *First National Bank of Lake Forest*, 22 Ill.2d 238.) It cannot be said that the trial court here improperly limited cross-examination.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*