PAULINE AMOS, ADMINISTRATRIX OF THE ESTATE OF GEORGE L. AMOS, DECEASED *v.* RAYMOND STROUD AND PAT SALMON

5-5886 482 S.W. 2d 592

Opinion delivered July 17, 1972

*Pearce, Robinson & McCord* and *J. Marvin Holman,* for appellant.

*Wright, Lindsey & Jennings,* for appellees.

JOHN A. FOGLEMAN, Justice. Pauline Amos, widow of George L. Amos, as administratrix of his estate, brought an action against Raymond Stroud and Pat Salmon, seeking to recover damages for medical bills, loss of earnings and conscious pain and suffering for the estate and for her loss of consortium and her mental anguish and that of other survivors of her husband. She alleged that her husband suffered injuries in an automobile collision caused by negligence of appellees, which ultimately caused his death. Commercial Union Insurance Company of America intervened, claiming subrogation rights as the workmen's compensation carrier for the employer of George Amos. When the tort action came on for trial, appellees conceded their liability, and the only issues were whether the injuries received by Amos caused or contributed to his death and the amount of the damages. The trial resulted in a judgment for $5,000 in favor of the estate for damages sustained by appellant's decedent prior to his death, but the jury found for appellees as to all other liability.

Appellant relies upon the following points for reversal:

I. The Trial Court erred in overruling the Plaintiff's motion in limine to prevent the subrogation claim of Commercial Union Insurance Company of America being presented to the jury.

II. The Trial Court erred in overruling the objections and motion to strike of the plaintiff in regard to the opinion of Dr. Ben O. Price stated in response to a hypothetical question.

Commercial Union Insurance Company, by permission of the court, filed its complaint in intervention, seeking a first lien to the extent of $697.50 on any recovery by appellant by right of subrogation under Ark. Stat. Ann. § 81-1340 (Repl. 1960). No allegations of liability were asserted against appellees. No answer to this pleading was filed by any party. Prior to the selection of a jury, appellant offered to stipulate that the compensation carrier would be entitled to receive $697.50 out of any judgment against appellees. This was done at a pretrial hearing during which appellees refused to admit the correctness of the amount claimed by the carrier, even though their attorney stated that they would offer no contradictory evidence. Appellant then made a motion to prohibit mention to the jury of the payment of workmen's compensation. The ground for the motion was that these payments were from a collateral source and had no bearing on the amount appellant was entitled to recover from appellees. The circuit judge denied this motion.

The record does not reflect any evidence offered by the intervenor in support of its claim and the forms of verdict submitted to the jury do not mention its claim in any way. Still, the judgment makes this claim a first lien on appellant's recovery for the amount alleged in the intervention and stipulated by appellant. It is admitted that the carrier's counsel made an opening statement to the jury, but it does not appear that he participated in the trial in any other manner or that any other mention was made of the compensation payments. However, on direct examination of a physician called as a witness by appellant, the doctor stated that a summary of his opinion as to the disability of Amos was contained in a letter to Amos' employer. On cross-examination appellees showed that this witness submitted reports to Commercial Union relating to Amos' injuries.

Appellant argues that the compensation carrier, having joined in her action against the third-party tortfeasors, was only entitled to a lien on the net proceeds of her recovery, and not to a separate claim against the tortfeasors. Appellees, on the other hand, contend that permitting intervenor's attorney to appear in the courtroom and make an open-

ing statement was proper because they had declined to admit the amount of Commercial Union's claim. They also contend that our decision in *St. Paul Fire and Marine Insurance Co.* v. *Wood,* 242 Ark. 879, 416 S.W. 2d 322, clearly establishes that the causes of action of the compensation carrier and the injured employee are separate and distinct. This position is clearly contrary to that implied by intervenor's complaint.

First, we should say that appellees misconstrue our holding in *Wood.* There we did not hold that there were two separate and distinct causes of action. We expressly stated that there was but one. We held that the single cause of action could be split with the consent of the defendant in the tort action, the sole beneficiary of the prevailing rule against splitting causes of action.[1] We should also note that no objection was made to the carrier's intervention here. The objection was directed to mention of the compensation payment before the jury. We think appellant's objection was well taken. The question has not heretofore been presented to us. The matter is treated by Professor Larson, who says:

> The right of the carrier to intervene in the employee's suit does not necessarily carry with it the right to participate in the conduct of the suit without the consent of the employee. This issue may be related to the bugaboo of prejudicing the employee's case by revealing to the jury that an insurance company is going to profit by any damage award the jury might make. 2 Larson, Workmen's Compensation Law 226.135, § 74.41 (1970).

---

[1]The statement in *Winfrey & Carlisle* v. *Nickles, Admr.,* 223 Ark. 894, 270 S.W. 2d 923, that Ark. Stat. Ann. § 81-1340 recognizes separate causes of action in the compensation beneficiary and in the compensation carrier should not be taken to mean that the single cause of action against the tortfeasor may be split. That statement relates to the separate rights of the beneficiary and the carrier to institute the action against the tortfeasor. This meaning is clearly indicated by the subsequent statement in the opinion that the beneficiary may institute *the action* with notice to the carrier, or that the carrier may institute *the action,* joining the beneficiary. If there were actually separate causes of action which could be brought by the carrier and the beneficiary, each acting independently, we could not have held, as we did in *Superior Forwarding Company* v. *Sikes,* 233 Ark. 932, 349 S.W. 2d 818, that the tortfeasor was not prejudiced by the trial court's refusal to require the carrier to intervene in a tort action instituted by the employee against it.

In other jurisdictions where the question has been presented it has usually been held that an intervening employer or carrier which has paid workmen's compensation benefits should not be permitted to participate in the trial of a suit against a third-party tortfeasor, without the consent of the injured employee. In *Sjoberg* v. *Ryerson & Son,* 8 Ill. App. 2d 414, 132 N.E. 2d 56 (1956), in commenting on an employee's objection to the carrier's participation in the conduct and trial of his suit against an alleged tortfeasor, the court appropriately said:

> We think there is merit in plaintiff's position. Conceivably, there could be such conflict which might seriously jeopardize a recovery in the action. The primary object of the statute is to afford the employer the protection of his lien for the amount the employer is obligated to pay the employee under the Workmen's Compensation Act and no more. He would have no interest in any recovery beyond that amount, whereas the employee's objective is more substantial, since he would be seeking to recover full damages for his injury, which could be much more than that allowed by the Workmen's Compensation Act. No lien of the employer could attach to the amount in excess of that paid or to be paid by the employer. No case has been cited to us which defines the right of the employer to participate in the trial of the suit. It may well be that no one has seriously considered that an employer has a right to participate in the trial of the suit, and therefore the question seems never to have been raised or decided. Our search has not revealed any decision upon that particular question.

> We believe the proper and just rule to apply in this type of situation is to allow the employer to join the action by intervention for the purpose allowed by the statute, and provide in the order that such intervention shall not extend to the intervening petitioner the right to participate in the conduct or trial of the suit, without the consent of plaintiff.

In *Gorrell* v. *Kansas Power & Light Co.,* 189 Kan. 374, 369 P. 2d 342 (1962), the court held that it was error for the trial court to permit the active participation of an in-

tervening workmen's compensation carrier, saying:

> The applicable statute, G.S. 1959 Supp. 44-504, provides that when the injury for which compensation is payable was caused under circumstances creating a legal liability against some person other than the employer to pay damages, the injured workman shall have the right to take compensation under the act and pursue his remedy by proper action in a court of competent jurisdiction against such third party, and that in the event of recovery from such third party by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by him to date of such recovery and shall have a lien therefor against such recovery, and the employer may intervene in any action to protect and enforce such lien.
>
> * * *
>
> We believe that portion of the statute providing that the employer shall be subrogated to the extent of the compensation and medical aid provided by him to the date of recovery, and that he shall have a lien therefor against such recovery and may intervene in the action to protect and enforce such lien, means that the employer or the insurance carrier is given the right to file with the court a notice of its lien so as to protect its subrogation rights in the event of recovery by judgment, settlement, or otherwise, but that it does *not* mean that the employer or insurance carrier may *actively participate* in the injured workman's action.
>
> Notwithstanding the fact that it was to the insurance carrier's interest that a large verdict—at least to the extent of $22,500—be recovered, and thus the "interests" of plaintiff and the insurance carrier may be deemed to have been the "same," we believe that it was error for the court to permit the insurance carrier actively to participate in the trial. As previously stated, this was plaintiff's lawsuit and the insurance coverage under the compensation act had no place in the pleadings or the evidence.

It was also said in *Jarbet Co.* v. *Hengst,* 260 S.W. 2d 88 (Tex. Civ. App. 1953), that it would have been improper

and prejudicial for the intervening employer to have offered any evidence to the jury on compensation payments made by it and error for the court to permit the fact that the employee-plaintiff was protected by insurance to be brought directly to the jury's attention. That court said that the intervenor's pleading is addressed to the court.[2]

We recognize that recoveries from collateral sources do not redound to the benefit of a tortfeasor, even though double recovery for the same danage by the injured party may result. *Freeman* v. *Reeves,* 241 Ark. 867, 410 S.W. 2d 740.[3] In states following the "collateral source rule" evidence showing that the injured person received payments from such a source is inadmissible, unless relevant for some purpose other than mitigation or reduction of damages. 25A C.J.S. 69, Damages § 160. We have also held that an employee is entitled to recover the full extent of his damages even though he was compensated to some extent through workmen's compensation. *Swindle* v. *Thornton,* 229 Ark. 437, 316 S.W. 2d 202[4] It is commonly held that evidence of the receipt or the amount of workmen's compensation benefits is not admissible in evidence before the jury, but to the trial judge only, unless controverted or some other basis for its admission develops in the trial. *Blue Ridge Rural Electric Cooperative* v. *Byrd,* 264 F. 2d 689 (4th Cir. 1959), rev'd on other grounds, 356 U.S. 525, 78 S. Ct. 893, 2 L. Ed. 2d 953 (1958); *Blatt* v. *C. C. Davis Construction Co.,* 184 Pa. Super. 30, 133 A. 2d 576 (1957); *Sweeney* v. *Max A. R. Matthews & Co.,* 46 Ill. 2d 64, 264 N. E. 2d 170 (1970). If recoveries from other sources are not to be deducted from the injured party's recovery, there is usually no reason why they should be disclosed to the jury and their disclosure could certainly result in prejudice. We think that the reasoning of the courts in the cases cited from foreign jurisdictions is consistent with our "collateral

[2]See also, *Varney* v. *Taylor,* 71 N.M. 444, 379 P. 2d 84 (1963), where it was held that intervention by a compensation carrier should be allowed under such conditions as would protect all parties to the litigation.

[3]For a discussion of this rule and its general acceptance see 22 Am. Jur. 2d 286, Damages § 206.

[4]The application of the collateral source rule to workmen's compensation benefits seems to be generally accepted. See 22 Am. Jur. 2d 292, Damages § 209; 25 C.J.S. 1017, Damages § 99 (3).

source rule" and properly applicable here. No valid reason for informing the jury of the payment or amount of workmen's compensation benefits received by the deceased existed after the court was informed that appellant conceded the right of the carrier to a lien for the exact amount sought by the carrier. We do not perceive any legitimate interest appellees had in the determination of this amount. Although the opening statement made by the intervenor's attorney is not reported, we do not see how he could have made any statement without mentioning compensation payments, the very thing to which appellant had objected. We conclude that the court's action was erroneous. We must assume that the error was prejudicial because we cannot say with assurance that the record discloses that it was harmless (see *Rickett* v. *Hayes,* 251 Ark. 395 (1971), 473 S.W. 2d 446), particularly in view of the fact that the carrier's participation was not insisted upon by it, but by appellees. The situation would be different if there were any indication that the carrier's rights were not being protected.

Appellant also argues that the circuit court erred in overruling her objections to the testimony of Dr. Ben O. Price in response to a hypothetical question and in denying her motion to strike the testimony. Dr. Price was a medical expert who testified by pretrial deposition as to the probable cause of appellant's decedent's death, even though he had not examined or treated appellant's decedent. His testimony was based on information gleaned from such sources as medical reports of other physicians. Appellant objected to any testimony of Dr. Price based upon a death certificate which recited the cause of death as coronary occlusion. Her argument is that the statement in the death certificate (which was not admitted in evidence) was the conclusion of an expert and an improper basis for Price's expert opinion, and that the evidentiary value of the death certificate was destroyed because its maker had admitted that his statement as to cause of death was based upon the medical history of the patient, but that there were actually three possible causes of Amos' death, i.e., coronary occlusion, cardiac arrhythmia, or a stroke. The judge admonished the jury not to consider anything with reference

to the death certificate because it had not been introduced in evidence.

We find no prejudice to appellant, even if the court's admonition was not sufficient preventative. Dr. Price considered the medical data recorded and testimony before the Workmen's Compensation Commission, by Dr. Shrigley (the treating physician), among the most significant factors forming the basis for his opinion. The thrust of Dr. Price's testimony was that the injuries suffered by Amos did not cause a coronary occlusion, and that a fatal arrythmia was unlikely due to the time lapsing between the automobile collision and the death. He also testified that he would not have suspected that Amos died of arrythmia, even without the death certificate. Whatever significance the death certificate may have been given by Dr. Price, the foundation of the opinion could well be said to be no less firm in view of the fact Dr. Shrigley attributed the hastening of the death to aggravation of a cardiac condition, a posterior myocardial infarction, and Dr. Manley, appellant's expert, said that coronary occlusion was the cause of death. This testimony as to cause of death is no different from that stated in the death certificate.

For the error indicated, the judgment is reversed and the cause remanded for a new trial.

BYRD, J., dissents.

CONLEY BYRD, Justice, dissenting. This is a wrongful death action allegedly resulting from a rear-end automobile collision. The collision occurred in August of 1967, and death occurred on April 25, 1968, from a heart condition. The big hurdle that appellant's counsel had was to show that the collision either caused or aggravated the existing heart condition. On this issue appellant's doctor on cross examination testified that he submitted to the Workmen's Compensation Carrier regular reports from August 25, 1967, through January 10, 1968, without mentioning any cardio vascular problem. This cross-examination was entirely proper and I doubt that the case could have been tried without reference to the Workmen's Compensation reports.

Appellant's only objection to the intervention of the Workmen's Compensation Carrier was as follows:

"I would further move in limine that the defense be prohibited from mentioning to the jury the fact of the compensation payment. It is a collateral source and certainly has nothing to do with how much we are entitled to recover in this lawsuit. We want them prohibited from mentioning the fact of the compensation."

We have more than a score of cases holding that an appellant is not entitled to complain of error that is not prejudicial. Since this could not have been tried nor the issues developed without mention of the Workmen's Compensation claim, I am unable to understand why appellant is entitled to complain of prejudice by the ruling made on his motion.

The majority opinion refers to an opening statement by the carrier's attorney, but since the statement is not in the record, I am unable to see how this court can assume what was said.

For the reasons stated, I respectfully dissent.