**Juan MORAN, Plaintiff-Appellee,**

v.

**The RAYMOND CORPORATION, Defendant-Appellant.**

**No. 72–1499.**

United States Court of Appeals, Seventh Circuit.

Argued April 26, 1973.

Decided Sept. 14, 1973.

Jerome H. Torshen, Robert A. Skirnick, Robert J. Hourigan, Chicago, Ill., for defendant-appellant.

Charles J. Reed, Chicago, Ill., for plaintiff-appellee.

Before MOORE, Senior Circuit Judge,* and CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

Defendant, The Raymond Corporation (Raymond), appeals from a judgment for $250,000.00 entered on a jury verdict in favor of plaintiff, Juan Moran, on his complaint for personal injuries he had allegedly received while he was an employee of Central Steel and Wire Company (Central).

Raymond manufactured a lift truck, known as a sideloader, which was designed to operate in narrow aisles. It differs from the standard fork lift truck, on which the load is carried fully beyond the front wheels in that, as the name sideloader indicates, the load-lifter is located on one side of the equipment and extends equidistant over the front and rear sets of wheels. At one end of the equipment there is located an operator's cage with the controls inside. Moran had operated a sideloader at Central for approximately three months. On the night in question, he was in the process of returning a tray to a rack approximately eight or nine feet above the ground when some wire rods on the tray slipped therefrom. In attempting to correct this situation, Moran left the operator's cage and first stood on the movable forks and eventually on a platform below the forks. Still not achieving the desired result, he attempted to lower the forks but rather than returning to the cage and while standing on the platform on the lift side of the equipment, he reached through an opening into the cage and pulled the control lever to lower the forks. Although he tried to bring his hand back quickly, it became stuck because of a bandage he had on his wrist. When the cross bar came down with a shearing action, Moran's right arm was seriously injured.

* Senior Circuit Judge Leonard P. Moore of the United States Court of Appeals for the Second Circuit is sitting by designation.

Moran's complaint was based on both negligence and strict liability theories. Among Raymond's defenses were that the lift truck was not defectively manufactured (and therefore could not be the basis of a strict liability in tort claim), that Moran had assumed the risk, and that Moran had misused the sideloader so as to bar recovery as a matter of law. The jury rejected all of the defenses and answered special interrogatories finding no assumption of the risk or misuse.

Initially we must decide whether or not we can review the sufficiency of the evidence in this case. Defendant moved for a directed verdict at the close of plaintiff's case and the district judge took the motion under advisement. There is no indication in the record that the motion was renewed in writing at the time the presentation of the evidence was completed. Rule 50, Fed.R.Civ.P., provides in part that "[a] party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made." "Nevertheless, the courts have adhered to the longstanding rule that the introduction of evidence at that point constitutes a waiver of the objection to the sufficiency of the evidence unless the motion is renewed at the time when all the evidence is in. What this means is that after the moving party has offered evidence: (1) the motion cannot serve as a necessary predicate for a motion for judgment under Rule 50(b); and (2) it cannot serve as the basis for attacking the sufficiency of the evidence in the appellate court. And this doctrine would appear to be applicable though the motion at the close of the opponent's case was reserved by the court rather than denied." 5A Moore, Federal Practice ¶ 50.05[1], at 2341–2 (2d ed.). (Footnotes omitted.)

9 Wright & Miller, Federal Practice and Procedure: Civil § 2536, at 593 (1971), states basically the same doctrine as follows:

"It is thoroughly established that the sufficiency of the evidence is not reviewable on appeal unless a motion for directed verdict was made in the trial court. Indeed a motion at the close of plaintiff's case will not do unless it is renewed at the close of all the evidence nor will the appellate court review the sufficiency of the evidence if the trial court has denied a motion that does not state specific grounds." (Footnotes omitted.)[1]

In an affidavit filed with his reply brief in this court, counsel for Raymond states that during an in-chambers but off-the-record conference with the district court judge he informed the judge that he had a motion for a directed verdict at the close of all of the evidence that he would like to have filed. Judge Napoli assertedly replied that the ruling on that motion would be the same as the ruling he made concerning the earlier motion for directed verdict, namely, that he would take it under advisement and that the ultimate ruling on both motions would be the same. "Therefore, I did not file a written Motion for Directed

---

1. A further complication enters the picture at this point although not raised by the plaintiff. The written motion filed by defendant at the close of plaintiff's evidence did not specify any grounds. However, counsel in argument to the court before introducing any evidence made it abundantly clear that the defendant was relying on assumption of risk and misuse. An Illinois case bearing on the defense of assumption of risk, Williams v. Brown Mfg. Co., 45 Ill.2d 418, 261 N.E.2d 305 (1970), was cited to the court. Although Rule 50(a), Fed.R. Civ.P., requires that the motion shall state the specific grounds, the "rule does not require technical precision in stating the grounds of the motion. . . . Although it is said that the better practice is for the motion to be in writing, the rule makes no such requirement and an oral motion on the record will suffice. An oral statement of grounds may save a written motion that is too general." 9 Wright & Miller, supra, § 2353, at 580–1. (Footnotes omitted.) We hold, therefore, that the motion at the close of plaintiff's evidence was sufficient under Rule 50(a).

Verdict at the close of all evidence." Judge Napoli, however, is deceased and in a counter-affidavit counsel for the plaintiff denies he was present at the purported conversation in chambers with the judge relating to a motion for a directed verdict at the close of all of the evidence. Defense counsel in his affidavit had indicated he was not certain whether plaintiff's counsel had heard the colloquy concerning a possible final motion for directed verdict.

The issue of whether we should consider this appeal as though a motion for directed verdict had been made at the close of all of the evidence becomes a close question because neither in argument on the defendant's post-trial motion, nor at any other time in the district court, did the plaintiff raise the question of lack of filing of this motion. Instead, at the time of the argument in the district court, plaintiff's counsel stated:

> "Under the applicable rules, the grounds for seeking a judgment notwithstanding the verdict must be identical and not expansive over theirs which were asserted in the motion for directed verdict at the close of the plaintiff's case, at the close of all the evidence, and upon which the Court has ruled on the 11th of April of this year."

We do not view favorably the raising of an issue, particularly a technical one, for the first time on appeal. On the other hand, it is incumbent on counsel to make the record in the district court as to issues he wishes to present on appeal.

Raymond relies on two cases to support its contention that we are not foreclosed from examining the evidence in this case. In United States v. 353 Cases, 247 F.2d 473 (8th Cir. 1957), the Government had brought a condemnation action against allegedly misbranded mineral water. At the close of the defendant's case the Government moved for a directed verdict, which was not granted. The Government called two rebuttal witnesses and the claimants called one surrebuttal witness. None of these witnesses testified concerning the grounds for the motion for a directed verdict. The Government failed to renew the motion at the close of all of the evidence and the district court subsequently denied judgment notwithstanding the verdict relying, in part, on the failure to renew the motion for a directed verdict. The Eighth Circuit reversed, stating:

> "We think that as a practical matter the Government did all that was necessary to preserve for review the question whether it was entitled to a directed verdict. This Court, moreover, in the public interest and to guard against injustice, may, of its own motion, notice errors which have not been properly preserved for review, if such errors are obvious, or if they otherwise seriously affect the fairness and integrity of the judicial proceedings." 247 F.2d at 477.

While not unmindful of the pragmatic values reflected in the above language, we also note that the exception carved out is most narrowly stated and is certainly based in part on the fact that the rebuttal witnesses testified only on collateral issues.

The second case on which Raymond relies is Bayamon Thom McAn, Inc. v. Miranda, 409 F.2d 968 (1st Cir. 1969). The case is somewhat similar to the one before us. The defendants had moved for a directed verdict at the close of the plaintiff's case and the district court had reserved its ruling. Defendants then submitted eight exhibits, none of which dealt with the issue of negligence or contributory negligence, but failed to renew their motions for directed verdicts. The court held that the defendants had not waived their right to move for judgment notwithstanding the verdict. The court relied on two factors. First, the district court itself showed that it felt that the defendants had preserved their point:

> "In a sense the court may well have led counsel reasonably to believe that all had been done that was necessary.

. . . This factor alone would be of no avail to appellants had the evidence subsequently presented been previously unrevealed, lengthy, or relevant to the issues raised by the motions for a directed verdict. [Citation omitted.] But this part of the trial occupying only two pages of transcript and involving no more than a few minutes, held no surprises." 409 F.2d at 971–972.

The case before us is similar to *McAn* to the extent that there may have been implied assurances by the district court that the record was preserved. However, the defendant in the present case did introduce more than an inconsequential amount of testimony following its motion for a directed verdict at the close of the plaintiff's case. Six witnesses, including the plaintiff as an adverse witness, testified. Their testimony covers 110 pages of the transcript.

In the First Circuit's own construction of *McAn* in Gillentine v. McKeand, 426 F.2d 717, 722 (1st Cir. 1970), it was emphasized that *McAn* was based on the fact that the evidence introduced by the defendant subsequent to its motion for a directed verdict "could not conceivably alter the court's decision on a motion for a directed verdict."

Some status of ambivalency results from the emphasis on the extent of the evidence which comes in after the first motion for a directed verdict is overruled. On the one hand, if there is substantial evidence introduced by the defendant and the motion is not renewed, the trial judge may be deprived of the opportunity, which he should have, of determining whether there was a sufficiency of evidence, based on *all* of the evidence. "[T]he litigant who has not moved for a directed verdict in the trial court must have been of the view that the evidence made a case for the jury; he should not be permitted on appeal to impute error to the trial judge for sharing that view." Little v. Bankers Life & Casualty Company, 426 F.2d 509, 511 (5th Cir. 1970). Also we are not unmindful that "[i]t not infrequently happens that the defendant himself, by his own evidence, supplies the missing link. . . ." Bogk v. Gassert, 149 U.S. 17, 23, 13 S.Ct. 738, 740, 37 L.Ed. 631 (1893).

On the other hand, if on analysis the additional evidence, even though extensive, accomplishes what the defendant intended it should, i.e., strengthening his case without simultaneously exposing a flaw, little justification would seem to exist for finding significance in the quantitative aspect where the trial judge has reserved ruling on the first motion until after all evidence has been put in, and, at the time of ruling, the evidence and issues are no weaker from the viewpoint of the movant than those which would have been presented had the second motion been filed.

As a background for our further consideration of the narrow issue before us we note from our examination of the record that the defendant's evidence did not aid plaintiff's position that there was no assumption of risk. Indeed, when the plaintiff himself, as an adverse witness, was put on the witness stand, he admitted that when he had been instructed on how to run the machine, he had been told always to stand in the cage when operating the controls. He further stated that because he knew he would be hit if he did not get out of the way he had pulled the control fast and withdrawn his hand quickly.

We now turn to the procedural aspects of the record made in the district court to aid us in determining whether Raymond has forfeited the privilege of challenging the sufficiency of the evidence. We have already adverted to the statement made by plaintiff's counsel which, inferentially at least, supports the premise that the district court judge did consider, when he finally overruled the motion for a directed verdict, that he was doing so on the basis of the sufficiency of all of the evidence.

On Friday, March 10, 1972, the plaintiff concluded his evidence and rested.

Raymond's motion for directed verdict was filed. The judge said he would reserve ruling on it until after he had heard argument. On the following Monday, March 13, 1972, as previously noted herein, the counsel for Raymond argued that there were sufficient facts to constitute assumption of risk as a matter of law. Counsel for Moran argued that the question was for the jury.

"THE COURT: [at the conclusion of the argument] All right. I am going to reserve my ruling. Let's go ahead."

At the conclusion of the evidence on March 13, the jury was excused and the judge had an unrecorded conference with counsel in chambers on instructions. It apparently was at this conference that the disputed colloquy concerning a final motion for directed verdict allegedly took place.

On the following day the court indicated it was going to go on the record in chambers with reference to the instructions "and everything we discussed after adjournment yesterday." The ensuing discussion concerned which of the tendered instructions would be given and which would be refused.

Moran objected to the giving of an instruction tendered by the defense because he did not believe that misuse was properly an issue although he agreed that assumption of risk was.

"THE COURT: In our informal discussion last evening, outside the presence of the court reporter, we discussed these questions. The Court decided that both misuse and assumption of risk would be proper in this case. Therefore, the objection is overruled, and Defendant's tendered Instruction No. 6 will be given."

The record is not helpful at this point, therefore, in determining what exactly may have been said, if anything, at the unrecorded session on the matter of the filing of a final motion for a directed verdict. It is clear, however, that there was an informal, unreported session, that the original motion for directed verdict which had been filed and argued

had never been ruled on, and that the issue of assumption of risk was to be submitted to the jury.

The jury reached a verdict on the date of submission of the cause to it. On March 28, 1972, the cause was continued to April 11, 1972, for further ruling. On the latter date, defendant's motion for a directed verdict was denied and judgment was entered. On April 20, 1972, the defendant filed its motion for judgment notwithstanding the verdict or in the alternative for a new trial.

The following extracts are from that motion:

&ast; &ast; &ast; &ast; &ast; &ast;

" . . . and in support of this motion, in addition to those grounds stated in the Motion for Directed Verdict made at the close of all the evidence, states as follows:

&ast; &ast; &ast; &ast; &ast; &ast;

11. As a matter of law, the plaintiff's use of the product at the time of the occurrence with full knowledge that he was in a position of danger, that there was a safer method by which he could have performed the function he was trying to perform and that he nevertheless proceeded with knowledge of the danger, constitutes assumption of risk which will bar a recovery of the plaintiff.

&ast; &ast; &ast; &ast; &ast; &ast;

16. The Court erred in failing to direct a verdict for the defendant either at the close of the plaintiff's evidence or at the close of all the evidence."

At the inception of the argument, the judge asked counsel for Raymond whether all of the argument had not already been heard. Counsel replied that while the primary discussion before had been concerning assumption of risk, the motion raised a number of other matters which hadn't really been stressed before. After adverting to some of the new matters in the motion, counsel returned to an argument on assumption of risk. Counsel for Moran, addressing himself first to the motion for judgment n.o.v., objected to the consideration of any new

matters not "asserted in the motion for directed verdict at the close of the plaintiff's case, at the close of all the evidence, and upon which the Court has ruled on the 11th of April this year." At no time was it suggested by counsel that the matter of assumption of risk was a new matter. Nor, more importantly, was there any intimation that the motion for judgment n.o.v. should not be entertained because a motion for directed verdict was not made at the close of all of the evidence. Yet, the authorities indicate that the filing of this motion at the completion of the evidentiary presentation is a requirement for consideration of the motion for judgment n.o.v. just as it is for appellate consideration of the sufficiency of the evidence on the denial of the motion for directed verdict, since the n.o.v. motion is technically only a renewal of the motion for directed verdict. 9 Wright & Miller, *supra*, § 2537, at 596–8.

■■ However, it also appears well established that the courts take a liberal view of what constitutes a motion for directed verdict in deciding whether there was a sufficient prerequisite for the motion for judgment. *Ibid.* at 596–7. The standard for granting the n.o.v. motion is the same as for the directed verdict motion. *Ibid.* at 599. It appears to us that the rationale of the liberality referred to in the text, *inter alia,* flows from the fact that when the n.o.v. motion is filed in the district court, there has been a presentation to the trial judge of the reasons for taking the case from the jury.

While the record is scanty, and it would have been helpful to have known all that transpired in the off-the-record conference, we are satisfied that the contentions of the defendant that it was entitled to a determination that there was assumption of risk as a matter of law were adequately presented to the trial judge at the necessary time. To reach

any other result would be to enshrine form over substance. Accordingly, we turn to a consideration of the sufficiency of the evidence for the purpose of determining the correctness of the district court's denial of judgment notwithstanding the verdict.

■ Under Illinois law, which is controlling on this aspect of the case, Illinois State Trust Co. v. Terminal R.R. Ass'n of St. Louis, 440 F.2d 497, 500 (7th Cir. 1971), a judgment should be directed or entered n.o.v. "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." Pedrick v. Peoria & Eastern R.R. Co., 37 Ill.2d 494, 510, 229 N.E.2d 504, 514 (1967).

■ We do not have to determine whether Raymond is correct in its contention that its lift truck was not "defective" as that term is used to invoke the doctrine of strict liability in tort actions since we find it clear under the *Pedrick* test that Moran assumed the risk. The Illinois Supreme Court adopted the doctrine of strict liability in tort in Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182 (1965). In Williams v. Brown Manufacturing Co., 45 Ill.2d 418, 261 N.E.2d 305 (1970), the court held that simple contributory negligence, which would bar recovery by a plaintiff in a tort action based on negligence, would not preclude recovery in a suit based on a strict liability theory, 45 Ill.2d at 426, 261 N.E.2d 305.

The court held, however, "that a plaintiff who knows a product is in a dangerous condition and proceeds in disregard of this known danger (often termed 'assumption of risk') may not recover for resulting injuries." 45 Ill.2d at 426, 261 N.E.2d at 309.[2] The test which the jury was to apply was

---

2. The court also held that "plaintiffs who 'misuse' a product—use it for a purpose neither intended nor 'foreseeable' (objectively reasonable) by the defendant—may be barred from recovery." 45 Ill.2d at 425, 261 N.E.2d at 309.

". . . whether a user has assumed the risk of using a product known to be dangerously defective is fundamentally a subjective test, in the sense that it is *his* knowledge, understanding and appreciation of the danger which must be assessed, rather than that of the reasonably prudent person (Restatement (Second) of Torts, § 496D, comment (c)), it must also be remembered that this is ordinarily a question to be determined by the jury. That determination is not to be made solely on the basis of the user's own statements but rather upon the jury's assessment of all of the facts established by the evidence. No juror is compelled by the subjective nature of this test to accept a user's testimony that he was unaware of the danger, if, in the light of all of the evidence, he could not have been unaware of the hazard (Restatement (Second) of Torts, § 496D, comments (d) and (e)); and the factors of the user's age, experience, knowledge and understanding, as well as the obviousness of the defect and the danger it poses, (Wade, Strict Tort Liability of Manufacturers, 19 Sw.L.J. 5 (1965), see Pitts v. Basile, 35 Ill.2d 49, 219 N.E.2d 472) will all be relevant to the jury's determination of the issue, if raised." 45 Ill.2d at 430–431, 261 N.E. 2d at 312. (Emphasis in original.)

This standard was reaffirmed by the Illinois Supreme Court in Sweeney v. Max A. R. Matthews & Co., 46 Ill.2d 64, 264 N.E.2d 170 (1970).

Although the test of assumption of risk is a subjective one, depending on the knowledge of the injured party, it is apparent that the question need not always go to the jury. The language in *Williams, supra,* that the defense of assumption of the risk ordinarily presents a question to be determined by the jury while permitting the jury to disbelieve the injured party's testimonial denial of knowledge of the danger, even though the test is a subjective one, does not mean that a jury question is presented when the testimony is clear that he did know of the danger.

In Fore v. Vermeer Manufacturing Co., 7 Ill.App.3d 346, 287 N.E.2d 526 (3d Dist., 1972), the court affirmed the grant of summary judgment against the plaintiff when the plaintiff admitted in his deposition that he had had numerous past difficulties with the machine: "It appears to be clear that the plaintiff had actual knowledge of the danger; that he understood and appreciated the risk, and that he deliberately exposed himself to such risk, all while he was of full age, well experienced, with complete knowledge and understanding, of an obvious defect, and an obvious danger." 287 N. E.2d at 527–528. A similar result was reached in the affirmance of a directed verdict at the close of the plaintiff's evidence in Denton v. Bachtold Brothers, Inc., 8 Ill.App.3d 1038, 291 N.E.2d 229 (4th Dist., 1972). Plaintiff has provided us with no contrary citation of authority.

If we now turn to Moran's own testimony and apply the Illinois standards for assumption of the risk, it becomes clear that Moran, on the testimony in this record, assumed the risk. Moran testified that he had been working at Central for approximately five months at the time of the accident. During the first two months he did not drive a sideloader. During the next three months, following a week of training including how to operate the machine, he had filled many orders daily, all with the help of a Raymond sideloader. Although at one point he testified that he had never been told not to operate the machine from outside the driver's cage, he later admitted that he had been instructed to stand in the cage "when you are operating the controls." He clearly knew that there was a substantial risk involved in working with the machine. Particularly, however, and most significantly, he recognized the danger in operating the machine in the way he was at the time he was injured since he testified that he knew the bar would hit him

if he did not move out of the way: "That's why I pulled the control fast and I withdrew the hand quickly." The bar was about a foot and a half above his head when he pulled the lever to lower the forks.

While one who stands under the guillotine blade with knowledge of the fact that there will be a descent of the operational part upon activation of the controlling lever would scarcely seem to be in a position to claim that the blade fell faster than he anticipated, nevertheless, we find no support in the record for Moran's contention that the lowering speed of the sideloader he had been operating for several hours at the time of the accident was greater than was that of the sideloader he had previously operated.

 By way of summary, Moran, standing out of the operator's cage in a position where he would be in the path of the equipment if it was caused to become operative, reached with some effort on his part into the control area and pulled the control lever down as far as it would go. He knew when he did that, the forks would start coming down and would go all the way to the bottom unless he pushed the lever back. This was clearly proven subjective evidence and the verdict, under the *Pedrick* test, cannot stand. Plaintiff argues that "[t]o say that Juan Moran consciously assumed the risk of his own injury would, under the circumstances, be to say that he intended to maim himself, or he was bent upon suicide." This conclusion does not follow. What is clear is that Moran was in a hurry and that he took a calculated risk that he could get his hand out of the way before the forks hit him. Workmen often take risks which they should not take and are fortunate enough to avoid injury. In finding that Moran assumed the risk, we are not dealing with the waiver of a constitutional right designed to protect fair trial, *cf.* Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), but rather with a hasty, but nonetheless knowing, decision. Obvious-ly Moran, who had operated the machine from the front of the forks before without misadventure, *thought* he could do so again. But that is not the test applied in Illinois. The test, although subjective, relates to knowledge of the risk and not to whether it was a good risk. See Fore v. Vermeer Manufacturing Co., *supra,* and Denton v. Bachtold Brothers, Inc., *supra.*

For the reasons hereinabove set out, the judgment of the district court is reversed.

Reversed.

United States Court of Appeals,
Third Circuit.