IN THE MATTER OF THE ESTATE OF Donald
C. CAMPBELL, Deceased

87-281                                    745 S.W.2d 596

Supreme Court of Arkansas
Opinion delivered February 29, 1988
[Rehearing denied March 28, 1988.]

*Darrell F. Brown, & Associates, P.A.,* by: *Darrell F. Brown,*
for appellant.

*Mickey Buchanan* and *Dowd, Harrelson & Moore,* by: *Gene
Harrelson,* for appellee.

STEELE HAYS, Justice. This appeal arises from the probate judge's approval of a petition for authority to settle a wrongful death claim by one of the two co-administratrices and over the objection of the other. Two points are presented by the appellants who are statutory beneficiaries of the wrongful death claim. First, it is argued that the judge ignored the interests of the appellants by granting the authority for the settlement. Second, it is urged that the distribution of the proceeds of the settlement was unfair. We hold there was no error in granting authority to settle the claim, but that the distribution of the proceeds of settlement must be modified.

Donald C. Campbell died intestate on April 11, 1984 at age forty-eight. He was survived by five adult daughters from a previous marriage who are the appellants: Linda Lovell, Rhonda Burt, Vickie Halliday, Donna Robbins, and Becky Loden. He was also survived by a widow, Verna Mae Campbell, and their minor son, Billy Don Campbell, appellees, who lived with and were supported by the decedent at the time of his death. The ages of the daughters ranged from twenty-seven to thirty-two. All were married and none was financially dependent upon Mr. Campbell. Billy Don Campbell was ten when his father died.

While we cannot know all the details of the death from the record, it is clear that it was lingering and agonizing. Mr. Campbell was in great pain which caused him to scream and cry. His body was somehow decomposing, and there was a constant smell of putrid flesh while he was hospitalized. Mrs. Campbell was with him virtually the entire time, as were some of the daughters. All of them visited him often and witnessed his condition.

Mrs. Campbell and Mrs. Lovell were appointed joint administratrices of Mr. Campbell's estate. Together they filed a wrongful death action against St. Paul Fire and Marine Insurance Company and Dr. Richard S. Ridlon, the physician who treated Mr. Campbell at DeQueen before he was moved to a hospital in Little Rock.

The defendants offered to settle the claim by paying a cash sum of $122,500 to all the beneficiaries with further payments to Mrs. Campbell and Billy Don to be made in the future. The proposed settlement provided that Mrs. Campbell would receive

$25,000 in five years, $50,000 in ten years, $75,000 in fifteen years, and $100,000 in twenty years. Billy Don would receive $10,000 in five years, $15,000 in ten years, $25,000 in fifteen years, $50,000 in twenty years, and $100,000 in forty years. Upon Mrs. Campbell's request for authority to agree to the settlement on behalf of the statutory beneficiaries of the wrongful death action, the probate court held a hearing. Testimony was taken with respect to the likelihood of success of the suit, given the reputation of Dr. Ridlon in Sevier County where the suit was to be tried, and the facts surrounding Mr. Campbell's treatment there, including the fact that Mr. Campbell had put off seeking medical help until he was quite ill. Mrs. Lovell testified that she felt the settlement was not an adequate payment for the loss she and her sisters had suffered and for the mental anguish they had endured as a result of their father's illness and death. Mrs. Campbell testified that she was not working outside the home at the time of Mr. Campbell's death and that he was earning between $21,000 and $26,000 a year. She testified that since the sale of the house, which had belonged to Mr. Campbell, and distribution of the proceeds, she and Billy Don were living in a trailer home and she had gone to work as a waitress earning $100 per week.

I

*The Settlement*

In his order granting authority to Mrs. Campbell to enter into the settlement, and in effect approving the settlement, the probate judge noted the sale of the family home, which had belonged to Mr. Campbell before his marriage to Verna Mae Campbell. Mrs. Campbell received $7,000, and each of the children received $3,000 in a partial distribution of the estate. The judge noted the sharp difference of opinion between the co-administratricies, but that their stalemate should not be allowed to thwart the wrongful death claim settlement if it were determined to be in the best interest of all the beneficiaries of the wrongful death action to accept the offer. In his order the judge discussed the financial situations of all the beneficiaries at the time of death and the obvious mental anguish suffered by all. He specifically found it to be in the best interest of the beneficiaries that Mrs. Campbell be allowed to accept the settlement offer and release the defendants in the wrongful death action. The consid-

erations were that Mrs. Campbell and her son would be entitled to damages for pecuniary loss resulting from the death of the husband and father as well as, for Mrs. Campbell, loss of consortium. The daughters would be able to present evidence only with respect to their mental anguish. Mrs. Campbell and Billy Don would clearly have had the most at risk if the offer of settlement were to be refused. A Sevier County lawyer testified that large verdicts were not common there, admitting that, in his experience, few cases in which such verdicts might have been possible had gone to trial in the county.

On the other side, the court had before it the fact that, given Mr. Campbell's life expectancy and earning capacity at the time of his death, the settlement would amount to only about half what he might have earned had he lived. There was also the possibility that a judgment might be obtained in excess of the amount offered and the costs of trial.

The appellants have not demonstrated that any factual determination made by the judge was clearly erroneous, Ark. R. Civ. P. 52(a), or that his decision was otherwise arbitrary or improper. He clearly did not ignore the interests of any of the beneficiaries, thus we affirm the decision to allow Mrs. Campbell to agree to the settlement.

## II

### *The Distribution*

The probate judge authorized the co-administratrix to enter into a settlement and directed the distribution of the proceeds among the wrongful death statutory beneficiaries. Of the initial payment of $122,500 he ordered the distribution as follows:

| | |
|---|---|
| Verna Mae Campbell | $102,500.00 |
| Billy Don Campbell | 10,000.00 |
| Linda Lovell | 1,000.00 |
| Rhonda Burt | 1,000.00 |
| Vicky Halliday | 1,000.00 |
| Dona Robbins | 1,000.00 |
| Becky Loden | 1,000.00 |

Mrs. Lovell and the other daughters contend the distribution was unfair in giving each of them only $1,000, to be paid from the

initial amount of the settlement. We agree.

Although probate cases are tried de novo on appeal, we regard the distribution of wrongful death proceeds as invoking in some measure the trial court's discretion. We recognize, as did the probate judge, that the dependency of Verna Mae Campbell and Billy Don Campbell justifies a disproportionate allowance in their favor. Even so, the size of the settlement permits adequate provision for the future support of the widow and son without, at the same time, virtually excluding the daughters. It was undisputed that Mr. Campbell had a close and loving relationship with all his children. All of the daughters were frequent visitors during Mr. Campbell's long hospitalization. Two of them, Mrs. Lovell and Mrs. Robbins were there almost around the clock. It was they who recognized the seriousness of their father's condition and took the prompt steps necessary to get him hospitalized. There was ample evidence of their devotion and of their witness to the extraordinary pain and suffering he experienced over a lengthy interval. While the daughters have husbands who are employed, none enjoys more than a marginal subsistence. Mrs. Lovell and her husband support themselves and five children on approximately $15,000 annually. In short, we believe the factor of dependency was recognized to the near exclusion of any other consideration. The very fact that the settlement as projected allocates $200,000 to Billy Don after he reaches adulthood (half of which is paid to him at age fifty, far beyond any plausible stage of dependency) demonstrates the inequity of the distribution. Contrasted, as well, is the fact that Mrs. Campbell would continue to receive sizeable payments, the final one being $100,000 twenty years hence. We conclude that an award of $1,000 to each daughter from a gross recovery of approximately $225,000 is for all practical purposes merely nominal. The order is modified to allow $5,000 to each appellant from the initial settlement figure.

AFFIRMED AS MODIFIED.