Debra E. BELL *v.* The ESTATE of Robert L. BELL, Deceased

93-1253                                      885 S.W.2d 877

Supreme Court of Arkansas
Opinion delivered October 31, 1994

*Baxter, Wallace, Jensen & McCallister*, by: *Ray Baxter*; and *Page & Thrailkill*, by: *Danny Thrailkill*, for appellant.

*Batchelor & Batchelor*, by: *Fines F. Batchelor, Jr.*, for appellee.

DONALD L. CORBIN, Justice. Appellant, Debra E. Bell, appeals from an order of the Crawford County Probate Court fixing the shares of the proceeds of a compromise settlement of the wrongful death claim arising from the death of appellant's spouse, Robert L. Bell ("Decedent"), allocable to appellant and to each of her minor children, Daren Bell ("Daren"), and Matthew Joel Houck ("Joel"). In accordance with the general wrongful death statute, Ark. Code Ann. § 16-62-102 (1987), the statutory beneficiaries of this action were appellant, Daren, Joel, Decedent's sole surviving parent, sibling and adult children. The wrongful death claim was filed in the United States District Court, Western District of Arkansas, settled by compromise agreement, and the shares of the settlement proceeds allocable to each statutory beneficiary, other than appellant, Daren and Joel, was also determined by agreement. After the probate court appointed a separate guardian *ad litem* for each of Daren and Joel, a hearing was conducted and the remaining settlement proceeds were fixed by the probate court pursuant to its order entered on August 5, 1993. Appellant appeals from this order and contends the probate court erred because: (1) it made an unfair distribution of the settle-

ment proceeds that was against the evidence presented at the hearing, and (2) it allowed testimony regarding collateral sources of income in fixing the amount of the shares. Jurisdiction is properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(3). We find no merit to appellant's arguments and affirm the judgment.

## I.

## THE APPORTIONMENT

Preliminarily, we note that on April 7, 1993 the probate court entered an order to seal and close the estate file in consideration of the parties' nondisclosure agreement governing the settlement agreement. In accordance therewith, we do not discuss the dollar amounts involved in this case.

Subsections (g) and (h) of the general wrongful death statute, section 16-62-102, provide that the court approving a compromise settlement shall fix the share of each beneficiary, upon the evidence, and that the probate court shall consider the best interests of all the beneficiaries. *Dale* v. *Sutton*, 273 Ark. 396, 620 S.W.2d 293 (1981). Subsection (f) of the statute directs that, if the case is tried, the sum fixed for damages shall be that which is "fair and just compensation for the pecuniary injuries, including a spouse's loss of the services and companionship of a deceased spouse and mental anguish resulting from the death, to the surviving spouse and next of kin of the deceased person."

The factors set forth in subsection (f) also guide the probate court's determination of the apportionment of the settlement proceeds in those cases where the damages issue is not tried. *See Estate of Campbell*, 294 Ark. 619, 745 S.W.2d 596 (1988). We have stated that, although probate cases are reviewed *de novo* on appeal, distribution of wrongful death proceeds does invoke the trial court's discretion in some measure. *Id.* The appellant has the burden to show the trial court was wrong and that prejudicial error was sustained. *Sutton*, 273 Ark. 396, 620 S.W.2d 293.

At the apportionment hearing in this case, the probate court heard testimony from three witnesses: appellant; her father, Mr. William Phelps; and an economic consultant retained by the estate, Dr. Ralph Scott, of Hendrix College. A pretrial report

from the guardian *ad litem* for each minor was also filed with the court. The evidence showed as follows:

1. At the date of his death, the Decedent was a 42-year-old self-employed drywall hanger/painter with an average annual taxable income of approximately $20,000.00 and an estimated remaining work life expectancy of 34 years. The household expenses of the Decedent and appellant were approximately equal to their income; consequently, they had no savings.

2. Appellant was 32 years old at the date of the Decedent's death. She had worked in various jobs for minimum wage, and was then attending a nursing program at a local school. After the Decedent's death, appellant was emotionally and physically unable to work or continue the nursing program.

3. The Decedent and appellant married in 1982. They had one natural child, Daren, and were also raising appellant's child by an earlier marriage, Joel. Joel had no personal relationship with his natural father, although the natural father paid monthly child support to appellant.

4. Substantial evidence was presented of the grief and mental anguish caused by the Decedent's death to appellant and both minors, including the need for psychological counseling for appellant and Joel.

5. The estate's economist, Dr. Ralph Scott, testified about his estimations of the value of the Decedent's income and household services now lost by appellant and the minors as a result of the Decedent's death. Those estimations, discounted to present value, established a dollar range which included the entirety of the remaining settlement proceeds available for distribution. With respect to the lost income of the Decedent, Dr. Scott also testified to compare the dollar value of that income which was lost by the appellant with the dollar value of that income which was lost by the minors; those dollar values, expressed as a percentage of the entire lost income computation, established that 52% of the lost income was sustained by appellant, and 48% of the lost income was sustained by the minors. Dr. Scott testified his computations of these economic losses did not address any other compensable element of loss permitted by the wrongful death statute, *e.g.*, mental anguish.

6. Appellant received a lump sum $50,000.00 benefit as beneficiary of a life insurance policy insuring the Decedent's life.

7. Appellant, Joel and Daren each received an equal amount from the Social Security Administration, on a monthly basis, on account of the Decedent's death.

8. Acting by their guardians *ad litem*, the minors proposed the following allocation of the remaining settlement proceeds.

Daren proposed the sum be distributed:

| Recipient | Percentage Share |
|-----------|------------------|
| To Appellant | 35% to 45% |
| To Daren | 40% to 50% |
| To Joel | 10% to 20% |

Joel proposed the sum be distributed:

| Recipient | Percentage Share |
|-----------|------------------|
| To Appellant | 33.3% |
| To Minors | 66.7% |
| TOTAL | 100.0% |

Joel proposed the minors' share be further divided, not equally, but based upon their specific losses, age, other support and specific needs.

9. Appellant proposed the sum be distributed:

| Recipient | Percentage Share |
|-----------|------------------|
| To Appellant | 72% |
| To Daren | 14% |
| To Joel | 14% |
| TOTAL | 100% |

After the hearing, the court issued a six-page order of distribution reciting that the court considered all of the evidence presented at the hearing, the reports of the guardians *ad litem*, as well as the entire estate file and the amounts of the settlement proceeds paid to another of Decedent's adult children who had recently lived with the Decedent and appellant. The court's order fixed 50% of the remaining settlement proceeds for distribution as appellant's share, to be paid to her outright, and fixed the other

50% of those proceeds, in unequal portions, as the shares for the two minors, Daren (32.5%) and Joel (17.5%).

Appellant argues that the court's apportionment was unfair, arbitrary and blatantly against the evidence presented at the hearing. We disagree with appellant and find the evidence does support the probate court's apportionment order. We note that the probate court's 50/50 apportionment of the remaining proceeds between appellant and the minors, in fact, roughly approximates Dr. Scott's apportionment of the economic losses as noted above (52% to appellant and 48% to the minors). Clearly, in fashioning its order, the court considered the evidence presented by Dr. Scott, and, in addition, considered the compensable elements enumerated in the wrongful death statute which Dr. Scott's computations did not address.

In appellant's brief, she argues this court should modify the probate court's order and apportion the remaining settlement proceeds in accordance with Dr. Scott's recommendation that each minor should receive approximately 14% of the remaining settlement proceeds as a college fund, and that the balance of those proceeds should be paid outright to appellant. In rejecting this argument, we note that the wrongful death statute directs that each beneficiary's share shall reflect that beneficiary's fair and just compensation for his injury suffered as a result of the Decedent's death. In this case, an allocation based on the cost of providing a college education to the minors would not be true to the statute's purpose because the evidence showed that these minors could not have expected the Decedent to provide their expenses for a college education had he lived. Appellant also argues that the probate court's order should be modified to pay the minors' shares outright to the appellant, as the minors' natural guardian, rather than to the guardians of their estates. We summarily dispose of this point which appellant failed to raise before the probate court, and which we will not consider for this first time on appeal. *Hawkins* v. *City of Prairie Grove*, 316 Ark. 150, 871 S.W.2d 351 (1994).

## II.

### COLLATERAL SOURCE RULE

Appellant's second argument is that the probate court erred

in admitting evidence in violation of the collateral source rule of certain payments made to appellant, Daren and Joel, on account of the Decedent's death, specifically, the life insurance proceeds paid to appellant, and the monthly Social Security Administration benefits now paid to appellant, Daren and Joel. We find no merit to this argument.

■ The "collateral source rule," we have stated, is "a general rule that 'recoveries from collateral sources do not redound to the benefit of a tortfeasor, even though double recovery for the same damage by the injured party may result.'" *Green Forest Pub. Schools* v. *Herrington*, 287 Ark. 43, 49, 696 S.W.2d 714, 718 (1985) (quoting *Amos, Adm'x v. Stroud & Salmon*, 252 Ark. 1100, 482 S.W.2d 592 (1972)). A review of the history and purpose of the rule informs our holding in this case.

The rule was first applied in the United States in 1854 and has been a part of American tort law thereafter. V. Schwartz, *Tort Law Reform: Strict Liability and the Collateral Source Rule Do Not Mix*, 39 Vand. L. Rev. 569, 570 (1986). The rule operates to exclude evidence of payments received by an injured party from sources "collateral" to (other than) the wrongdoer, such as private insurance or government benefits, received on account of the decedent's death in determining the amount of the damages sustained by that injured party for which the wrongdoer is liable. Consequently, the injured party who is compensated for his injury by collateral sources as well as by the wrongdoer receives a double recovery. *Id.* For that reason, the collateral source rule has been criticized by commentators who point out that it is incongruous with the compensatory goal of the tort system:

> But in these cases the courts measure "compensation" by the total amount of the harm done, even though some of it has been repaired by the collateral source, not by what it would take to make the plaintiff whole. It is "compensation" in a purely Pickwickian sense that only half conceals an emphasis on what defendant should pay rather than on what plaintiff should get.

F. Harper et al., *The Law of Torts* § 25.22, at p. 651 (2d ed. 1986). Although the weight of authority in American jurisprudence is that the collateral source rule governs in most contexts, the rule

has been modified or substantially abandoned in over a dozen states since 1986. *Id.* (Cum. Supp. No. 1 1994).

In Arkansas, however, the collateral source rule persists and its application has been extended to cases other than tort actions. *See, e.g., Herrington*, 287 Ark. 43, 696 S.W.2d 714 (evidence of unemployment compensation benefits was barred by collateral source rule in action under Teacher Fair Dismissal Act). This court has held that, in applicable proceedings, the collateral source rule applies unless the evidence of the benefits from the collateral source is relevant for a purpose other than the mitigation of damages. *Parrish* v. *Newton*, 298 Ark. 404, 768 S.W.2d 17 (1989). The issue presented in this case is whether the collateral source rule applies in the context of the proceeding to apportion the wrongful death settlement proceeds among the beneficiaries of the action.

Although substantial authority exists affirming the applicability of the collateral source rule in the wrongful death proceeding to determine the liability and damages recoverable from the tortfeasor, we have located no Arkansas authority and scant authority from other jurisdictions squarely addressing the precise issue before us. *See generally*, Annotation, *Compensation from other source as precluding or reducing recovery against one responsible for personal injury or death*, 18 A.L.R. 678 (1922), supplemented by Annotation, 95 A.L.R. 575 (1935); Annotation, *Division among beneficiaries of amount awarded by jury or received in settlement upon account of wrongful death*, 14 A.L.R. 516 (1921), supplemented by Annotation, 112 A.L.R. 30 (1938) and Annotation, 171 A.L.R. 204 (1947); S.M. Speiser et al., *Recovery for Wrongful Death and Injury* §§ 6:7-6:14 (3d ed. 1992); 22A Am. Jur. 2d. *Death* §§ 305-10 (1988); 25A C.J.S. *Death* § 37(1) (1966). We note *Schultz* v. *Western Farm Tractor Co.*, 111 Wash. 351, 190 P. 1007 (1920), in which a widow-administratrix appealed the apportionment award of wrongful death proceeds to her and the decedent's issue where the trial court considered evidence of a life insurance benefit and backpay award to widow-administratrix. The widow argued those payments were immaterial. Without addressing the collateral source rule, the Washington Supreme Court affirmed the apportionment order stating "[o]ne of the inquiries here was the financial condition the parties were left in because of the death . . . and it seems to us clear that the

property received by either claimant arising from the death is a proper subject of inquiry." *Id.* at 353, 190 P. at 1008.

A review of the history of our current general wrongful death statute illustrates that from the effective date of Act 53 of 1883, the original precursor to our current statute, and continuing until the repeal and replacement of that legislation by Act 255 of 1957, the amount recovered in the wrongful death action was required to be distributed in accordance with the laws of distribution and descent. *Hicks* v. *Missouri Pac. R.R. Co.*, 181 F. Supp. 648 (W.D. Ark. 1960). Effective with the 1957 legislation, the apportionment of the award was made by the court or jury in accordance with the evidence. *Id.* This change was regarded as essentially a procedural change in the method by which the distribution of the amount recovered would be determined since the substantive right of the beneficiaries of the action to collect their allocable share of the damages continued in force. *DeLong* v. *Green*, 229 Ark. 100, 313 S.W.2d 370 (1958). Clearly, an historical distinction has been built into the wrongful death legislation between the proceeding to determine the apportionment of the award and the proceeding to determine the liability and computation of damages recoverable from the tortfeasor, which distinction is preserved in the scheme of our current statute where the issue of fixing the amount of damages is dealt with in subsection 16-62-102(f) and the issue of fixing the shares of the statutory beneficiaries in that award is dealt with in subsection 16-62-102(g).

Carrying on in our review of the history of our state's wrongful death legislation, we note this court in interpreting another wrongful death act, Act No. 88 of 1911, which was applicable for deaths caused only by railroad accidents, found the statute did not provide a methodology for determining who should participate in the damages award and to what extent. Perforce the court concluded "to formulate a rule of distribution consonant with reason and the principles of sound justice," and directed as follows:

> [t]he fairest rule, it appears to us, is that it should be for the jury to say from a consideration of all the facts and circumstances whether the plaintiff in a given case had suffered pecuniary injury, and, if so, what was its extent as compared with the others entitled to share in the fund —

that, also, to be determined from a consideration of all the circumstances in the case, and from this his proportionate share will be fixed.

*Faulkner* v. *Faulkner*, 186 Ark 1082, 1092, 1093, 57 S.W.2d 818, 822 (1933).

Appellant argues the wrongful death statute clearly contemplates the collateral source rule should be applied and cites subsection 16-62-102(f) as her authority. As we have noted, however, subsection (f) merely addresses fixing the amount of the damages when the wrongful death action is tried. In this case, by contrast, the amount of damages was reached by compromise agreement and was finalized prior to the commencement of the apportionment proceeding. Therefore, the amount of damages recovered from the wrongdoer could not have been mitigated or reduced by the introduction of evidence of collateral sources of income at the apportionment proceeding. It follows then that the public policy concern which engendered the collateral source rule — recoveries by the injured party from collateral sources shall not benefit the wrongdoer by reducing the damages award for which he is liable — and which supports the rule's application in the context of the proceeding to determine the liability and the damages recoverable from the wrongdoer is simply not an authentic consideration in the context of this proceeding to apportion those damages among the various injured parties.

In conclusion, we find, consonant with reason and the principles of sound justice, that the probate court committed no error in considering all the circumstances of the case, including the challenged third-party payments, in fixing the shares of the statutory beneficiaries before it, and hold that the collateral source rule was not applicable to this proceeding. In so holding, we do not modify the application of the collateral source rule in the context of the proceeding to determine the liability and damages recoverable from the wrongdoer. We note that to avoid any perceived prejudice, the trial court may bifurcate the issues of determining liability and fixing the damages under subsection 16-62-102(f), from the issue of fixing the shares of the statutory beneficiaries in those damages under subsection 16-62-102(g). ARCP Rule 42(b).

Affirmed.