5-571                                    275 S. W. 2d 767

Opinion delivered February 28, 1955.

*Harper, Harper & Young,* for appellant.

*Donald Poe,* for appellee.

WARD, J.   Appellee, Dora E. May, secured a jury verdict against appellant on the ground that she was injured when the car in which she was riding was negligently struck or forced into a bridge by an auto transport truck belonging to appellant. The principal ground urged by appellant for a reversal is that there is no substantial evidence in the record to identify the truck.

*The facts,* with the one exception of identity referred to above, are practically undisputed. On November 5, 1953, appellee was a passenger in a 1951 Pontiac automobile, owned by Mr. and Mrs. J. K. May and being driven by Mrs. J. K. May, traveling south on U. S. Highway 71. As the Pontiac approached a small bridge approximately 10 miles north of Waldron at about 6 o'clock P. M. the occupants saw a transport truck approaching from the south with bright lights blinking and apparently in the middle of the highway. Mrs. J. K. May attempted to pull to the right to avoid a collision and in doing so the Pontiac struck the bridge or the transport struck the Pontiac causing the injuries complained of.

There were no eye witnesses to the accident except the occupants of the Pontiac and the driver of the transport. The driver of the transport was not called as a witness. Appellee and Mrs. J. K. May, whose statements were substantially the same, admit that they could not identify any markings or letterings on the truck. Their only description of the transport truck was that it was yellow or of a yellowish tinge, that it was a two decker, that it was suitable for transporting automobiles, and that it was fringed with lights. There is more testimony relative to the identity of the transport but that will be discussed later in connection with the sufficiency of the evidence.

*Statement of points* relied on by appellant. As set out by appellant they are as follows:

1. "The evidence of identification of the vehicle alleged to have belonged to appellant was insufficient to submit to the jury, and the trial court should have directed a verdict for appellant, . . ."

2. "The trial court erred in overruling appellant's motion for new trial . . . because:

(a) "The jury's verdict is so contrary to the preponderance of the evidence and so contrary to the weight of evidence as to shock the sense of justice;"

(b) "The jury's verdict is wholly unsupported by any substantial evidence . . ."

As we understand these different assignments of error they all amount to a contention that there is no substantial evidence, on the question of identification of the transport, to support the jury's verdict, and we shall hereafter discuss the case on that basis.

*Identification.* Both sides cite several decisions of this court, two noted later, dealing with the question here under consideration. It is our thought however that former decisions bearing on the question of the sufficiency of the evidence, can only be persuasive when they rest upon substantially the same state of facts as those we are called on here to consider.

It is well understood, of course, that when this court reviews the evidence supporting the verdict of a jury it must view the testimony relative to a factual situation in the light most favorable to appellee.

In addition to the testimony of appellee and Mrs. J. K. May relative to the identification of the transport there is other testimony which we think is sufficient to make a jury question. *D. W. Miller,* age 63, who had formerly been a deputy sheriff and policeman, stated that he was going north on Highway 71 at about the time the accident happened and when he was one-quarter to one-half mile south of the place of the accident, an auto transport, going in the same direction at the speed of about 80 MPH, passed him and almost forced him into a ditch, and; that the transport was empty and was colored yellow. When he proceeded on north to the small bridge where the accident occurred he saw the wrecked Pontiac.

*Mrs. Clifton Akes* was coming south on Highway 71 at approximately the time when the accident occurred and she saw a yellow auto transport parked by the side of the road a few hundred yards north of the said bridge, and a man was getting into the transport but she could not read the lettering on the truck.

*Clifton Akes* stated that he was traveling north on Highway 71 in a two ton truck; before he got to the bridge a yellow transport passed him going in the same direction traveling about 60 M.P.H or more, and that when he came to the bridge he found the wrecked Pontiac; after stopping briefly at the bridge he proceeded north approximately 150 yards and parked his truck; he saw a yellow transport truck parked by the roadside, and; by the lights of his own car he said he could read the lettering on the transport. This witness first gave his testimony relative to the lettering in a discovery deposition taken by appellant, and appellant stresses the fact that this testimony is at variance with the testimony he gave at the trial as it relates to the lettering and the identity of the transport. The substance of Akes' *deposition* is: As I was going north on Highway 71 an automobile transport truck passed me going very fast in the same direction and in a few minutes or seconds I came to the bridge and saw the wrecked Pontiac where I stopped for a few seconds and then went on north about 150 yards to my cousin's house and parked; ''Q. Did you see this automobile carrier truck any more? A. Yes, sir, it was parked by the side of the road and I saw a man getting into the transport; Q. Can you describe the vehicle? A. It was just a common auto agency truck that carries cars. It was yellow. I have seen trucks of this description on the highways many times, and it had writing on it. Q. What was it? A. It had on the door 'Auto Agency, Oklahoma City' and there was more writing on the door. Q. Auto Agency, A-g-e-n-c-y? A. It was abbreviated or something on there. I know at the time there had been a wreck. Q. In other words you don't know positively what name was on there do you? A. Yes sir, I know that 'Auto Agency, Oklahoma City' was on there. Q. And that is all you are positive that was on there? A. I didn't read all of it. Q. Then that would be all that you are positive about? A. Yes sir. Q. Auto Agency, Oklahoma City? A. Yes sir. Q. Did it have Oklahoma City, Oklahoma. A. I don't know

now whether it did or not. Q. Did it have the word 'Incorporated' on it? A. It could have I wouldn't say."

Akes' *testimony* at the trial was more positive and definite regarding the identity of the transport and in substance it was as follows: The words "Oklahoma City" were on the right hand door; the lettering was in black and was two or three inches high. "Q. Now then, can you tell this court and jury the name on that door there? A. Auto Transports and an abbreviated letter at the bottom. Q. What was that abbreviated letter? A. I-n-c-." Witness was positive that the words "Auto Transports, Inc." were on the door; he did not know what the word "I-n-c" meant. On cross-examination witness stated that the lettering was in a curved shape and that the words "Oklahoma City, Oklahoma" were above the words "Auto Transport, Inc.," and he thought the word "Oklahoma" was below "Oklahoma City."

At the close of appellee's testimony appellant moved for an instructed verdict on the ground that the transport which caused the wreck had not been identified as belonging to it. We think the testimony concerning identification of the transport presented a question for the jury. It is not denied by appellant that their transports are colored and lettered substantially the same as described by Akes in his testimony. Appellant does however insist vigorously that the discrepancies in the testimony given by Akes and the statements made in his deposition are such as to render his testimony at the trial of no value and unworthy of belief, and that there is therefore no substantial evidence by which the jury could identify the transport. The discrepancies do exist as shown heretofore but we do not think they are of such a contradictory nature that we can say as a matter of law that the jury, which observed Akes on the witness stand, did not have a right to accept his testimony as given from the witness stand. Also, to a certain extent, there is other testimony and other circumstances which tend to corroborate Akes' testimony regarding the identity of the truck. It is undisputed that a transport of the same general description and color did cause the

wreck and the transport which Akes described and which he saw parked only a few hundred yards north of the bridge was certainly in position at the right time to have caused the wreck, and there is no evidence of any other transport of a similar description which could have caused it.

Appellant insists that our decision in the case of *Southwestern Transportation Company* v. *Chambliss,* 197 Ark. 865, 125 S. W. 2d 123, calls for a reversal, but we do not agree. Without discussing the *Chambliss* case fully it is sufficient to point out the following: There, no one testified definitely to the description of the truck that was alleged to have caused the injuries to Chambliss. On the other hand Chambliss, when he described the truck to the officers, described it as a Southern Grocery truck and that it had a tarpaulin over it; the driver of appellant's truck testified that he passed Chambliss' automobile on the highway and that it had already been damaged when he saw it, and; there were also other discrepancies. The facts in the *Chambliss* case, *supra,* were not at all like the facts in the case under consideration, and, as before intimated it cannot be relied on as an absolute guide in this case. The distinguishing difference between the *Chambliss* case and this case is that, in the former, this court found there was no substantial evidence to identify the truck, while here there is ample evidence. In the first instance there was no evidence for the jury to consider but in the second instance it was a question for the jury to say what testimony it believed.

To sustain the judgment of the lower court appellee relies on the case of *Lion Oil Refining Company* v. *Smith,* 199 Ark. 397, 133 S. W. 2d 895. Although the factual situation relative to identification was somewhat similar to the facts of this case and although this court said a question was presented for the jury, still the cited case cannot be accepted as an absolute guide. The one rule that has been many times announced by this court is that where there is substantial evidence to support a jury's verdict the finding will not be disturbed by this court.

When the court refused to direct a verdict, appellant introduced as a witness its Vice President, John Marks, apparently for the purpose of showing the impossibility or improbability of one of its trucks being the one that caused the wreck. Marks who supervises the movement of cars by transport trucks for his company, stated that his office was in Kansas City but that the company's home office was in Oklahoma City, Oklahoma. He stated that his company operates 310 vehicles in 16 states including Arkansas and he introduced in evidence Driver's Daily Log records of three or four drivers who were on Highway 71 on the day the accident occurred. According to the records it appears very unlikely that one of appellant's transport trucks was at the scene of the accident at the time it happened. However it was admitted by Marks that the records contained only the data as it was furnished by the drivers themselves and that the accuracy of the records depended on the truth and integrity of the driver. Typical of these Driver's Daily Log records is the one made out for R. L. Barney. Barney's record shows that he arrived at Shreveport, Louisiana, from the south, at 9 P. M., November 4, 1953, and that he rested there until 9 A. M., November 5 [the day of the accident]. The next notation shows that he arrived at DeQueen, Arkansas, at 11 A. M. and remained one hour. Then the record shows that he arrived at Alma, Arkansas, at 4:30 P. M. and stayed one hour. Then according to the record he arrived at Neosho, Missouri, at 9 P. M., and stayed there until 6 A. M., November 6, and arrived at Kansas City at 11 A. M. Another driver, Homer Rector, was shown to have come from the south and arrived at Ft. Smith at 2 P. M. on the day of the accident. None of the records purport to show at what time any of appellant's transports were at Waldron or at any other town in Arkansas other than those mentioned above. The record shows or we take knowledge of the fact that it is approximately 130 miles from Shreveport to DeQueen, Arkansas, that it is approximately the same distance from DeQueen to Ft. Smith, Arkansas, that it is 13 miles from Ft. Smith to Alma, Arkansas, and that

Waldron is approximately 80 miles north of DeQueen. It is from these records that appellant concludes that the jury was forced to find that its transport was not and could not have been at the scene of the accident, 10 miles north of Waldron, at approximately 6 o'clock P. M. on November 5. It is our view however that since the records contain information furnished by the drivers without any showing as to when the information was furnished, and since the drivers themselves were not made available for cross-examination, that the jury was not bound to accept that information without question. At least we cannot say as a matter of law that the jury was bound to accept at face value this character of testimony to the exclusion of other testimony on behalf of appellee as mentioned above. Again it was a question of fact for the jury to decide after consideration of all of the testimony in the record.

*Amount of Judgment.* Appellee asked for $2,800.00 for injury, pain and suffering and $200.00 for medical expenses. The jury gave appellee judgment for the full amount of $3,000.00. We think there was sufficient evidence to support the judgment of $2,800.00 for appellee's injuries. It is true that no such amount of pecuniary loss was sustained by reason of loss of wages or earning power, but there was evidence of substantial injury and suffering. Appellee appears to have a permanent impairment of the use of her knee and leg, and she was confined for approximately five weeks. Dr. Wright stated the injuries were of such as to cause mental pain and bodily suffering; that the cuts healed in normal time but that "the left knee stayed swollen and painful for a long time"; that the small cut on the elbow will probably be permanent; that there was "a rather long laceration under her armpit" which healed but left a small scar; she received a head and neck injury which could not be classified as permanent; and that she has lost thirty per cent (30%) use of her right leg for the rest of her life.

On the other hand the testimony in regard to medical expense shows that appellee had expended or was

obligated to expend only the sum of $28.00. There was an intimation by appellee that there was some other expense but there was no testimony as to the amount. Consequently the judgment should be and it is hereby reduced to $2,828.00.

Finding no reversible error the judgment of the lower court, as above modified, is hereby affirmed.