MONTGOMERY WARD & CO., Inc. *v.* G.W.
ANDERSON and Shirley Anderson

97-1456                                         976 S.W.2d 382

Supreme Court of Arkansas
Opinion delivered October 22, 1998

*Wright, Lindsey & Jennings LLP*, by: *Jay Moody*, for appellant.

*Hively & Ketz*, by: *Vickie A. Warner*, for appellees.

DAVID NEWBERN, Justice. This is a tort case in which the issue concerns application of the collateral-source rule. The Trial

Court held that the rule required exclusion of evidence of the partial forgiveness of a debt for medical services rendered to the plaintiff. The defendant moved for a new trial pursuant to Ark. R. Civ. P. 59(a)(8), arguing that the ruling was an error of law that prevented it from having a fair trial. The Trial Court denied the motion, and we affirm.

On November 14, 1994, appellee Shirley Anderson was badly injured in a fall while shopping in appellant's Montgomery Ward store in Little Rock. Montgomery Ward personnel sent her to the hospital at the University of Arkansas for Medical Sciences ("UAMS") to be treated. Ms. Anderson had surgical and other medical-services expenses at UAMS totaling $24,512.45. Montgomery Ward moved *in limine* to prohibit Ms. Anderson from presenting the total amount billed by UAMS as proof of her medical expenses and asked that her evidence be limited to the actual amount for which she would be responsible to pay. In response, Ms. Anderson stated that, through her attorney, she had reached an agreement with UAMS that UAMS would discount the bill by fifty per cent. Ms. Anderson asserted that the collateral-source rule would prohibit Montgomery Ward from introducing evidence of the discount.

The Trial Court denied the motion *in limine*, ruling that the negotiated discount with UAMS was a collateral source, and allowed evidence of the entire amount billed by UAMS. Montgomery Ward urges that the ruling and the denial of the motion for new trial made on the same basis were erroneous.

■ ■ The decision to grant or deny a new trial under Rule 59(a)(8) is within the discretion of the trial court, and that decision is not reversed absent a manifest abuse of discretion, that is, discretion exercised thoughtlessly and without due consideration. *Nazarenko v. CTI Trucking Co., Inc.*, 313 Ark. 570, 856 S.W.2d 869 (1993). *See also Coca-Cola Bottling Co. v. Priddy*, 328 Ark. 666, 945 S.W.2d 355 (1997); *Drope v. Owens*, 298 Ark. 69, 765 S.W.2d 8 (1989). Similarly, a trial court's ruling on the admission or exclusion of evidence will not be reversed absent abuse of discretion. *See* Ark. R. Evid. 104(a); *Esry v. Carden*, 328 Ark. 153, 942 S.W.2d 846 (1997).

■ We have held that the collateral-source rule applies unless the evidence of the benefits from the collateral source is relevant for a purpose other than the mitigation of damages. *Parrish v. Newton*, 298 Ark. 404, 768 S.W.2d 17 (1989). The issue, then, is whether the forgiveness of a debt for medical services is a collateral source to be sheltered by the rule. There is no Arkansas authority dealing directly with that precise issue, but our cases explaining the policy behind the rule support the Trial Court's ruling.

The Trial Court relied on *Green Forest Public Schools v. Herrington*, 287 Ark. 43, 696 S.W.2d 714 (1985), and *Bell v. Estate of Bell*, 318 Ark. 483, 885 S.W.2d 877 (1994), in holding that the negotiated discount was a collateral source sheltered by the rule. Additionally, the Trial Court stated that the facts of the case did not come within the four exceptions to the collateral-source rule set forth in *Evans v. Wilson*, 279 Ark. 224, 650 S.W.2d 569 (1983), and *Nazarenko v. CTI Trucking Co., Inc.*, 313 Ark. 570, 856 S.W.2d 869 (1993), and that the rule therefore applied.

■ Although those cases do not directly answer the question in this case, they deal with analogous situations and explain the policy behind the collateral-source rule. A trial court must "exclude evidence of payments received by an injured party from sources 'collateral' to . . . the wrongdoer, such as private insurance or government benefits . . . ." *Bell v. Estate of Bell*, 318 Ark. 483, 490, 885 S.W.2d 877, 880 (1994). *See also Green Forest Public Schools v. Herrington*, 287 Ark. 43, 696 S.W.2d 714 (1985); *Patton v. Williams*, 284 Ark. 187, 680 S.W.2d 707 (1984); *Evans v. Wilson*, 279 Ark. 224, 650 S.W.2d 569 (1983). Recoveries from collateral sources "do not redound to the benefit of a tortfeasor, even though double recovery for the same damage by the injured party may result." *Bell v. Estate of Bell*, 318 Ark. at 490, 885 S.W.2d at 880; *Green Forest v. Herrington*, 287 Ark. at 49, 696 S.W.2d at 718.

In the *Bell* case, we recognized that commentators had criticized the rule as being "incongruous with the compensatory goal of the tort system" and that some jurisdictions had modified or abrogated the rule. *Bell*, 318 Ark. at 490, 885 S.W.2d at 880. To refute that criticism, we quoted in the *Bell* case from F. HARPER,

ET AL., THE LAW OF TORTS § 25.22, at p. 651 (2d ed. 1986) as follows:

> But in these cases the courts measure "compensation" by the total amount of the harm done, even though some of it has been repaired by the collateral source, not by what it would take to make the plaintiff whole. It is "compensation" in a purely Pickwickian sense that only half conceals an emphasis on what defendant should pay rather than on what plaintiff should get.

■ ■ We also noted that the rule had been extended to cases in other areas of the law, such as unemployment compensation received during a period later held to have resulted from a wrongful discharge under the Teacher Fair Dismissal Act. *Green Forest v. Herrington*, 287 Ark. at 49, 696 S.W.2d at 718. In a later case, *East Texas Motor Freight Lines, Inc. V. Freeman*, 289 Ark. 539, 713 S.W.2d 456 (1986), a defendant argued that the collateral-source rule was inequitable because it resulted in a windfall to the plaintiff. We disposed of the argument by explaining the policy behind the rule as follows:

> Whether she received the money from her employer or from an insurance policy, she, rather than the alleged tortfeasor, is entitled to the benefit of the collateral source, even though in one sense a double recovery occurs. *Vermillion v. Peterson*, 275 Ark. 37, 630 S.W.2d 30 (1982). The law rationalizes that the claimant should benefit from the collateral source recovery rather than the tortfeasor, since the claimant has usually paid an insurance premium or lost sick leave, whereas to the tortfeasor it would be a total windfall.

*Id.* at 548, 713 S.W.2d at 462. That statement of policy and the cases cited favor including discounted and gratuitous medical services within the shelter of the collateral-source rule. There is no evidence of record showing that Montgomery Ward had anything to do with procuring the discount of Ms. Anderson's bill by UAMS. The rationale of the rule favors her, just as it would had she been compensated by insurance for which she had arranged.

Montgomery Ward cites *Auto Transports, Inc. V. May*, 224 Ark. 704, 275 S.W.2d 767 (1955), as authority that the collateral-source rule allows plaintiffs to introduce evidence only of bills that must actually be paid as the result of the injury inflicted by the

defendant. In the *Auto Transports* case, the plaintiff requested damages of $200 for her medical bills. The evidence the plaintiff presented at trial indicated that she was only obligated to pay $28 in medical bills, and thus it was held that she could recover only that amount. The *Auto Transports* case is not helpful here, as the issue there had to do with the failure of proof by the plaintiff and not application of the collateral-source rule.

■ We recognize four situations in which the rule does not apply, as explained in *Evans v. Wilson*, 279 Ark. 224, 650 S.W.2d 569 (1983). They are cases in which a collateral source of recovery may be introduced (1) to rebut the plaintiff's testimony that he or she was compelled by financial necessity to return to work prematurely or to forego additional medical care; (2) to show that the plaintiff had attributed his condition to some other cause, such as sickness; (3) to impeach the plaintiff's testimony that he or she had paid his medical expenses himself; (4) to show that the plaintiff had actually continued to work instead of being out of work, as claimed. *Id.* at 226, 650 S.W.2d at 570. *See also* HOWARD W. BRILL, ARKANSAS LAW OF DAMAGES § 9-4 (3d. ed 1994). This Court has also allowed evidence of collateral sources when the plaintiff opens the door to his or her financial condition. *See Babbitt v. Quik-way Lube & Tire, Inc.*, 313 Ark. 207, 853 S.W.2d 273 (1993); *Younts v. Baldor Electric Co.*, 310 Ark. 86, 832 S.W.2d 832 (1992). The Trial Court ruled that none of the exceptions applied to the facts at hand, and an examination of the abstract indicates that ruling was correct. There is no testimony by the plaintiff that arguably invokes any of the exceptions.

■ The RESTATEMENT (SECOND) OF TORTS § 920A(2) provides guidance on this issue and explains that the general rule is that "[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." Comment *b* to that Restatement section explains that, if the plaintiff is responsible for the benefit received, the law allows the plaintiff to keep it. Further, if the benefit was a gift to the plaintiff from a third party or established for the plaintiff by law, the plaintiff should not be deprived of the advantage that it confers. Another way to state the rule is to say that "it is the

tortfeasor's responsibility to compensate for all harm that he [or she] causes, not confined to the net loss that the injured party receives." RESTATEMENT (SECOND) OF TORTS § 920A cmt. *b*. Comment *c*(3) indicates that gratuities of cash or services are collateral sources that are not subtracted from a plaintiff's recovery. The comment gives the example of a doctor who does not charge for medical services.

Other authority indicates that a substantial number of jurisdictions addressing the issue have held that the plaintiff may recover the reasonable value of nursing care or services rendered gratuitously for the plaintiff's benefit. *See* J.A. Connelly, Annotation, *Damages for Personal Injury or Death as Including Value of Care and Nursing Gratuitously Rendered*, 90 A.L.R.2D 1323 (1963). The primary issue remaining today is how to value the services, *see* David W. Knotts, Annotation, *Valuing Damages in Personal Injury Actions Awards for Gratuitously Rendered Nursing and Medical Care*, 49 A.L.R.5TH 685 (1997), but that issue is determined in this case by the total medical bill submitted to Ms. Anderson by UAMS.

Montgomery Ward cites cases from Massachusetts, New York, and Illinois for the proposition that gratuitous medical services may not be an item of recovery because the policy behind the collateral-source rule does not apply where the plaintiff has incurred no expense or obligation for the services needed. *Peterson v. Lou Bachrodt Chev. Co.*, 392 N.E.2d 1 (Ill. 1979); *Coyne v. Campbell*, 183 N.E.2d 891 (N.Y. 1962); *Daniels v. Celeste*, 21 N.E.2d 1 (Mass. 1939). We are, however, persuaded by cases holding that gratuitous medical services do fall under the collateral-source rule. *Oil Country Haulers, Inc. v. Griffin*, 668 S.W.2d 903 (Tex.App. 14 Dist. 1984); *Texas Power & Light Co. v. Jacobs*, 323 S.W.2d 483 (Tex.Civ.App. 1959). *See also Joshmer v. Fred Weber Contractors, Inc.*, 294 S.W.2d 576 (Mo.App. 1956), which held that contributions received by the injured party as a direct result of being injured are not to be taken into consideration in assessing damages.

■ We choose to adopt the rule that gratuitous or discounted medical services are a collateral source not to be considered in assessing the damages due a personal-injury plaintiff. It is

the rule recommended by the RESTATEMENT (SECOND) OF TORTS, and it is consistent with our oft-stated policy of allowing the innocent plaintiff, instead of the tortfeasor defendant, to receive any windfall associated with the cause of action. Accordingly, we hold that the Trial Court did not err by excluding evidence of the UAMS discount as a collateral source.

Affirmed.