ATTORNEY FOR APPELLANT
Mark A. Holloway
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
DEFENSE TRIAL COUNSEL OF INDIANA
Donald B. Kite, Sr.
Kelly R. Eskew
Indianapolis, Indiana

James D. Johnson
Evansville, Indiana

ATTORNEYS FOR AMICUS CURIAE
INSURANCE INSTITUTE OF INDIANA, INC.
Bryan H. Babb
Kelly M. Scanlan
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
David W. Stone, IV
Anderson, Indiana

Michael Phelps
Bloomington, Indiana



**FILED**
May 27 2009, 3:47 pm

**CLERK**
of the supreme court,
court of appeals and
tax court

---

# In the
# Indiana Supreme Court

No. 41S01-0810-CV-539

BRANDON STANLEY,

*Appellant (Defendant below),*

v.

DANNY WALKER,

*Appellee (Plaintiff below).*

Appeal from the Johnson Superior Court, No. 41D01-0510-CT-00078
The Honorable Kevin M. Barton, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 41A01-0610-CV-462

**May 27, 2009**

**Sullivan, Justice.**

The amount of medical expenses actually paid by the plaintiff in this personal injury case was discounted from the amount originally billed because of arrangements between the plaintiff's health insurance company and the medical service providers. The defendant sought to introduce evidence of the discounted amount actually paid over the plaintiff's objection that Indiana's "collateral source" statute bars evidence of insurance benefits. To the extent the discounted amounts may be introduced without referencing insurance, they may be used to determine the reasonable value of medical services.

**Background**

Brandon Stanley and Danny Walker were involved in an automobile accident in 2004. As a result of the accident, Walker sustained injuries and received treatment from eleven different medical providers. Walker filed a complaint against Stanley, arguing that as a result of Stanley's negligence, Walker incurred medical expenses, lost wages, and experienced pain and suffering. Before trial, Stanley admitted negligence; this case proceeded on the issue of damages only.

During the trial, Walker, the plaintiff, introduced redacted medical bills totaling $11,570 showing the amounts medical service providers originally billed him. Stanley, the defendant, made no objection to the introduction of the medical bills into evidence. These bills, to repeat, showed the amounts originally billed but not the amounts totaling $4,750 that were discounted as a result of negotiations between the medical service providers and Walker's health insurance company. Neither Walker nor his insurance company is financially responsible for the amount of the discounts. Walker's medical providers accepted payment from his insurance company of $6,820 ($11,570 minus $4,750) in satisfaction of the medical bills occasioned by Stanley's negligence.

At the close of Walker's testimony, Stanley asked the trial court to admit Walker's discounted medical bills totaling $6,820 into evidence, complete with an offer of proof. Walker objected on grounds that evidence of the discounted bills violated Indiana's collateral source statute, Ind. Code § 34-44-1-2, which in part prohibits the introduction of evidence of "insurance

2

benefits" in personal injury cases. The court sustained Walker's objection. It determined that insurance and "anything flowing from the insurance benefit purchased by the plaintiff . . . ."[1] would thus be prohibited under the collateral source statute. The court found, in other words, that the discounts constituted "insurance benefits" paid for by the plaintiff.

The jury returned a $70,000 general verdict in favor of Walker. Stanley appealed, asserting that the trial court erred when it barred introduction of Walker's discounted medical bills into evidence. The Court of Appeals affirmed. Stanley v. Walker, 888 N.E.2d 222, 230 (Ind. Ct. App. 2008).

Stanley then sought, and we granted, transfer. Stanley v. Walker, 898 N.E.2d 1226 (Ind. 2008) (table).

## Discussion

## I

As set forth above, both the trial court and the Court of Appeals held that it would have violated Indiana's "collateral source" statute for defendant Stanley to present evidence to the jury that plaintiff Walker's medical providers had accepted $4,750 less than the amount they had originally billed in satisfaction of the medical bills occasioned by Stanley's negligence. As such, we begin with a consideration of the "collateral source" statute and its common law predecessor, the "collateral source" rule.

At common law, the collateral source rule prohibited defendants from introducing evidence of compensation received by plaintiffs from collateral sources, that is, sources other than the defendant, to reduce damage awards. This rule held tortfeasors accountable for the full extent of the consequences of their conduct, "regardless of any aid or compensation acquired by plaintiffs through first-party insurance, employment agreements, or gratuitous assistance." Shir-

---

[1] App. 71.

3

ley v. Russell, 663 N.E.2d 532, 534 (Ind. 1996) (quoting Shirley v. Russell, 69 F.3d 839, 842 (7th Cir. 1995)).

The Legislature abrogated the common law collateral source rule by enacting the collateral source statute. Shirley, 663 N.E.2d at 534.[2] Pursuant to our collateral source statute, evidence of collateral source payments may not be prohibited except for specified exceptions. See id. The statute provides the following:

> In a personal injury or wrongful death action, the court shall allow the admission into evidence of:
> (1) proof of collateral source payments other than:
>     (A) payments of life insurance or other death benefits;
>     (B) insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly; or
>     (C) payments made by:
>         (i)   the state or the United States; or
>         (ii)  any agency, instrumentality, or subdivision of the state or the United States;
> that have been made before trial to a plaintiff as compensation for the loss or injury for which the action is brought[.]

I.C. § 34-44-1-2.

The purpose of the collateral source statute is to determine the actual amount of the prevailing party's pecuniary loss and to preclude that party from recovering more than once from all applicable sources for each item of loss sustained in a personal injury or wrongful death action. I.C. § 34-44-1-1(1)-(2). At the same time, it retains the common law principle that collateral source payments should not reduce a damage award if they resulted from the victim's own foresight – both insurance purchased by the victim and also government benefits – presumably because the victim has paid for those benefits through taxes.

An injured plaintiff is entitled to recover damages for medical expenses that were both necessary and reasonable. See Cook v. Whitsell-Sherman, 796 N.E.2d 271, 277 (Ind. 2003).

---

[2] The collateral source statute referenced in Shirley, I.C. § 34-4-36-1 (repealed by Pub. L. No. 1-1988, § 221), is now codified at I.C. § 34-44-1-2.

Thus we are confronted with the question of how to determine the reasonable value of medical services when an injured plaintiff's medical treatment is paid from a collateral source at a discounted rate.

Other jurisdictions have considered this issue with varying results. In one approach, courts apply the collateral source rule to negotiated discounts on the plaintiff's medical care for which the plaintiff paid consideration. See Arthur v. Catour, 833 N.E.2d 847, 853-54 (Ill. 2005) (holding that plaintiffs may present evidence of the billed amount of their medical services and defendants may challenge the reasonableness of the billed amount without specifying what evidence the defendant could introduce to challenge the billed amount); Mitchell v. Haldar, 883 A.2d 32, 40 (Del. 2005) (holding that the plaintiff can present evidence of the billed amount as representing the reasonable value of the medical services without addressing whether the defendant was barred from introducing evidence of the discount).

Two states courts have held that the medical discounts were a collateral source, but that they were compelled to set off the collateral source amount against an award of compensatory damages under their respective state statutes. See Goble v. Frohman, 901 So. 2d 830, 832-33 (Fla. 2005); Slack v. Kelleher, 104 P.3d 958, 967 (Idaho 2004).

In another approach, the Ohio Supreme Court has allowed both the amount paid and the amount billed into evidence to prove the reasonable value of medical services. See Robinson v. Bates, 857 N.E.2d 1195, 1200 (Ohio 2006) (holding that the jury may determine that the reasonable value of medical services is the amount originally billed, the amount accepted as payment, or some amount in between).

## II

Indiana Evidence Rule 413 provides one method of proving the reasonable value of medical expenses. It reads as follows: "[s]tatements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury are admissible into evidence. Such statements shall constitute prima facie evidence that the charges are reasonable." Evid. R.

413.  By its terms, Rule 413 allows actual past medical charges to serve as prima facie evidence that the charges are reasonable.

> The purpose of Rule 413 is to provide a simpler method of proving amount of medical expenses when there is no substantial issue that they are reasonable and were caused by the tort.  If there is a dispute, of course the party opposing them may offer evidence to the contrary, including expert opinion.  By permitting medical bills to serve as prima facie proof that the expenses are reasonable, the rule eliminates the need for testimony on that often uncontested issue.  Finally, the fact that a statement was submitted is at least some evidence that the charge is normal for the treatment involved, and it was necessary to be performed.

Cook, 796 N.E.2d at 277-78.  Thus, medical bills can be introduced to prove the amount of medical expenses when there is no substantial issue that the medical expenses are reasonable.

However, in cases where the reasonable value of medical services is disputed, the method outlined in Rule 413 is not the end of the story.  See Cook, 796 N.E.2d at 277.  The opposing party may produce contradictory evidence to challenge the reasonableness of the proffered medical bills, including expert testimony.  See id.  Additionally, reasonableness of medical expenses can be proven, in part, by demonstrating that the plaintiff paid the actual amounts incurred.  Smith v. Syd's, Inc., 598 N.E.2d 1065, 1066 (Ind. 1992).  This is premised on the notion that a plaintiff would not pay an unreasonable bill.  Id.  The paid bill certainly may constitute evidence of the reasonable value of services, but it is not dispositive.  See id.

> The law of Indiana will allow a plaintiff to recover neither the actual amount of medical bills charged to him nor the amount of medical bills paid by him, but rather, the reasonable and fair value of medical expenses necessarily incurred by him.  The actual amount charged to the plaintiff or the amount actually paid by him may tend to prove the reasonable and fair value of the services rendered to him but are not conclusive on the issue.

Chemco Transp., Inc. v. Conn, 506 N.E.2d 1111, 1115 (Ind. Ct. App. 1987) (quoting Herrick v. Sayler, 160 F.Supp. 25, 29 (N.D. Ind. 1958)), rev'd on other grounds, 527 N.E.2d 179 (Ind. 1988).

6

In sum, the proper measure of medical expenses in Indiana is the reasonable value of such expenses. This measure of damages cannot be read as permitting only full recovery of medical expenses billed to a plaintiff. Id. Nor can the proper measure of medical expenses be read as permitting only the recovery of the amount actually paid. Id. The focus is on the reasonable value, not the actual charge. This is especially true given the current state of health care pricing.

The complexities of health care pricing structures make it difficult to determine whether the amount paid, the amount billed, or an amount in between represents the reasonable value of medical services. One authority reports that hospitals historically billed insured and uninsured patients similarly. Mark A. Hall & Carl E. Schneider, Patients As Consumers: Courts, Contracts, and the New Medical Marketplace, 106 Mich. L. Rev. 643, 663 (2008). With the advent of managed care, some insurers began demanding deep discounts, and hospitals shifted costs to less influential patients. Id. This authority reports that insurers generally pay about forty cents per dollar of billed charges and that hospitals accept such amounts in full satisfaction of the billed charges. Id.

As more medical providers are paid under fixed payment arrangements, another authority reports, hospital charge structures have become less correlated to hospital operations and actual payments. The Lewin Group, A Study of Hospital Charge Setting Practices i (2005). Currently, the relationship between charges and costs is "tenuous at best." Id. at 7. In fact, hospital executives reportedly admit that most charges have "no relation to anything, and certainly not to cost." Hall, Patients As Consumers at 665.[3] Thus, based on the realities of health care finance, we are unconvinced that the reasonable value of medical services is necessarily represented by either the amount actually paid or the amount stated in the original medical bill.

When dealing with a similar issue, our sister court in Ohio declared that, "[t]he jury may decide that the reasonable value of medical care is the amount originally billed, the amount the medical provider accepted as payment, or some amount in between . . . . both the original bill

---

[3] Indeed, amicus in this case, the Insurance Institute of Indiana, Inc., flatly says "charges billed by health care providers are effectively irrelevant to the value of the services provided . . . ." (Amicus Br. at 8.)

and the amount accepted are evidence relevant to the reasonable value of medical expenses." Robinson, 857 N.E.2d at 1200-01.[4] We adopt this approach.

At issue in Robinson was the application of Ohio's common law "collateral source rule" in a personal injury action. Id. at 1196. Ohio courts had recognized the collateral source rule since 1970. Id. at 1199. The rule prohibited a jury from being told about a plaintiff's receipt of payment for the plaintiff's injury from a source other than the defendant. Id. The court held that the collateral source rule was not applicable to the discounts to the medical bills because they were not payments made by a third party to the plaintiff. Id. at 1200-01. The court did not identify either the amount billed or the discounted amount paid as the appropriate evidence to be submitted to a jury as the reasonable value of medical expenses. Instead, the court determined that both values were relevant evidence that should be submitted to a jury to determine the reasonable value of medical services. Id. at 1200. The court recognized that, "[b]ecause no one pays the negotiated reduction, admitting evidence of [discounts] does not violate the purpose behind the collateral-source rule. The tortfeasor does not obtain a credit because of payments made by a third party on behalf of the plaintiff." Id.

The reasonable value of medical services is the measure used to determine damages to an injured party in a personal injury matter. This value is not exclusively based on the actual amount paid or the amount originally billed, though these figures certainly may constitute evidence as to the reasonable value of medical services. A defendant is liable for the reasonable value of the services. We find this to be the fairest approach; to do otherwise would create separate categories of plaintiffs based on the method used to finance medical expenses. See Robinson, 857 N.E.2d at 1200 (discussing how its rule avoided the creation of separate categories of plaintiffs based on individual insurance coverage).

---

[4] During the time at issue in Robinson, Ohio's collateral source rule excluded evidence of benefits paid by a collateral source. 857 N.E.2d at 1199-1200. Thus, the Ohio Supreme Court's decision was rendered under a collateral source rule different from our collateral source statute. However, we find nothing in its ruling inconsistent with the operation of our collateral source statute.

Given the current state of the health care pricing system where, to repeat, authorities suggest that a medical provider's billed charges do not equate to cost, the jury may well need the amount of the payments, amounts billed by medical service providers, and other relevant and admissible evidence to be able to determine the amount of reasonable medical expenses. To assist the jury in this regard, a defendant may cross-examine any witness called by the plaintiff to establish reasonableness. The defendant may also introduce its own witnesses to testify that the billed amounts do not represent the reasonable value of services. Additionally, the defendant may introduce the discounted amounts into evidence to rebut the reasonableness of charges introduced by the plaintiff. We recognize that the discount of a particular provider generally arises out of a contractual relationship with health insurers or government agencies and reflects a number of factors – not just the reasonable value of the medical services. However, we believe that this evidence is of value in the fact-finding process leading to the determination of the reasonable value of medical services.

The collateral source statute does not bar evidence of discounted amounts in order to determine the reasonable value of medical services. To the extent the adjustments or accepted charges for medical services may be introduced into evidence without referencing insurance, they are allowed.

## III

In accordance with Rule 413, Walker introduced his original medical bills as prima facie evidence of the reasonable value of medical services. He presented billing statements showing gross charges of $11,570.[5] Stanley attempted to introduce evidence representing that "other amounts of money actually represent the reasonable amount [for the medical expenses] . . . ." (App. 69.) Stanley argues that he was entitled to demonstrate that the amounts paid and accepted by Walker's medical providers contradicted Walker's prima facie evidence of reasonable medi-

---

[5] This Court has previously decided that "statements" are equivalent to "bills" or "charges." Cook, 796 N.E.2d at 277. By one definition, a "statement" shows the balance due. Id. "[Rule 413's] reference to 'statements of charges' is in this sense." Id.

9

cal expenses.  As discussed above, when there is a dispute as to the prima facie evidence of the reasonable cost of medical expenses, the opponent may introduce contradictory evidence.

Stanley conceded that he "[could not] ask Mr. Walker the amount of the expenses that were paid by [Anthem], that's the collateral source."  (App. 66.)  Instead, Stanley contends that he wanted to enter into evidence the amount that two parties have agreed to as "reasonable" as evidenced by the discounts.  Stanley wanted to submit evidence to the jury that would show that the amount accepted in satisfaction of the medical charges totaled $6,820, that is, $4,750 less than the $11,570 originally billed.  Because Stanley sought to do so without referencing insurance, his evidence should have been admitted.  The jury was instructed that:

> The proper measure of damages for medical services is the reasonable and fair value of medical expenses necessarily incurred by a Plaintiff.  As such, the proper measure of damages for medical services is not the actual amount of medical bills charged to a Plaintiff nor the amount of medical bills paid by a Plaintiff.
>
> Statements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury constitute prima [facie] evidence that the charges are reasonable and fair.

App. 132.

The first two sentences of this instruction were perfectly proper.  But the third sentence was not.  As just noted, the trial court should have allowed Stanley's evidence of the discounted amount actually paid.  To the extent that the trial court included in the instruction reference to the amount initially billed as evidence of reasonable and fair value, it should also have referred to the discounted amount actually paid (after having earlier allowed that amount to have been admitted into evidence).

**Conclusion**

Because the amount at issue constitutes such a small percentage of the overall damages award, we affirm the judgment and remand this case to the trial court with orders to reduce the

10

damage award by $4,750.  If Walker will not accept this remittitur, he is free to retry the issue of damages before another jury.

Boehm, J., concurs with a separate opinion in which Shepard, C.J., joins.

Dickson, J., dissents with a separate opinion in which Rucker, J., concurs.

**Boehm, Justice, concurring.**

I concur in the majority opinion. I write separately to respond to some points that Justice Dickson makes.

First, and obviously, we hold today only that the discounted price actually paid for medical services is admissible evidence as to the reasonable value of those services. We do not hold that it is conclusive. Evidence Rule 413 provides that the bills for a medical service are admissible and are "prima facie evidence" of the reasonable price for the service. Prima facie evidence is not conclusive and may be rebutted by other evidence. The issue thus is simply whether the discounted prices from sticker prices for today's medical services are relevant under the Rules of Evidence. I think it is obvious that they are, because they reflect the amounts that the providers are willing to accept for their services. As we all know, most but not all Americans have some form of employer or group based health insurance. See Carmen DeNavas-Walt, Bernadette D. Proctor & Jessica C. Smith, U.S. Census Bureau, Income, Poverty, and Health Insurance Coverage in the United States: 2007 at 19 (2008), available at http://www.census.gov/prod/2008pubs/p60-235.pdf ("The percentage of people covered by employment-based health insurance [was] 59.3 in 2007 . . . ."). And, as the majority opinion explains, many of these plans include prices that are not trivially discounted from the stated price that is rarely collected. Transactions at these discounted prices presumably constitute the majority in the market for any service provided by physicians or hospitals, and in any case constitute a sizable share of all transactions. Because these discounted prices are the bulk of all pricing for a given service, I cannot conclude that they are irrelevant to determining the reasonable price of that service.

Second, some managed health care programs confer some or all of the benefits to health care providers that Justice Dickson identifies as hidden additions to the discounted price to reach the real reasonable value of the services provided. But some of these—prompt payment and avoiding collection costs—are provided by credit card companies for relatively insignificant charges compared to the discounts from sticker price for many health care services. I do not believe the most important of these—access to a large population—is properly considered as a benefit conferred by the third party on the health care provider. Rather, it is something the insured

and the insurer have arranged to pool their bargaining power against the provider, and the provider has agreed to sell at that bargained price. Moreover, many, including many of the largest insurers, do not control the insured's selection of the provider. By obtaining reduced prices for their insureds, they encourage the insureds to choose a participating provider, and by presenting this large pooled bargaining power, they obtain lower prices from the providers. But that does not suggest that these prices are not reasonable. To the contrary, because the majority of transactions occur at those prices, unless the providers are mispricing their services, these prices should be those that provide a reasonable compensation to the provider.

Third, Justice Dickson identifies a number of complexities he sees in establishing the reasonable price for the service if we do not take the sticker price as conclusive by holding inadmissible evidence of the discounted price. But if we were to choose between the sticker price that most people do not pay and the discounted price that most people do pay, we should hold that the sticker price is to be excluded from evidence as the less realistic evidence of the reasonable value of these services that the real market for them reflects. Cf. James McGrath, Overcharging the Uninsured in Hospitals: Shifting a Greater Share of Uncompensated Medical Care Costs to the Federal Government, 26 Quinnipiac L. Rev. 173, 185 (2007) (noting that health care payment systems have rendered hospitals' list prices "relatively meaningless").

Shepard, C.J., joins.

2

**Dickson, Justice, dissenting.**

The majority holds that defendants in personal injury cases may introduce evidence of reduced amounts actually paid and accepted to satisfy accounts for medical services under arrangements between a plaintiff's insurer and the medical service providers "[t]o the extent the discounted amounts may be introduced without referencing insurance." I believe this new rule contravenes the express requirements of the collateral source statute, Ind. Code § 34-44-1-2, and is also unfair and undesirable judicial policy.

Although only four thousand or so dollars is actually at stake in this appeal, the majority's decision impacts more than just the calculation of medical expense damages that an injured plaintiff is entitled to receive from a defendant whose wrongful acts caused the injury. The amount of reasonable medical expenses incurred by a plaintiff is an important factor that influences juries in their assessment of additional general damages. As a plaintiff's medical expenses increase or decrease, a corresponding effect on the award of general damages is often observed.[1] It is thus not surprising that the amici curiae Defense Trial Counsel of Indiana and Indiana Trial Lawyers Association are strongly asserting opposing views.

**The Collateral Source Statute**

The new rule established today, in my opinion, contravenes the express provisions of the collateral source statute, which should control this case. The collateral source statute states:

> Sec. 2. In a personal injury or wrongful death action, the court *shall allow* the admission into evidence of:
> > (1) proof of collateral source payments *other than*:
> > > (A) payments of life insurance or other death benefits;
> > > (B) insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly; or
> > > (C) payments made by:
> > > > (i) the state or the United States; or
> > > > (ii) any agency, instrumentality, or subdivision of the state or the

---

[1] This practical reality finds additional confirmation from the defendant's assertion that "it's likely the jury's verdict of $70,000 was influenced by the level of medical expenses it erroneously believed Walker had incurred." Br. of Appellant at 8.

1

> United States;
>> that have been made before trial to a plaintiff as compensation for the loss or injury for which the action is brought;
>
> (2) proof of the amount of money that the plaintiff is required to repay, including worker's compensation benefits, as a result of the collateral benefits received; and
> (3) proof of the cost to the plaintiff or to members of the plaintiff's family of collateral benefits received by the plaintiff or the plaintiff's family.

Ind. Code § 34-44-1-2 (emphasis added). Creating an exclusion from the common law collateral source rule, the statute expressly allows evidence of certain collateral source payments, but explicitly declines to extend this admissibility to payments in the form of "insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly." *Id.* § 34-44-1-2(1)(B).

The defendant's appellate claim is that the trial court erred in excluding his evidence offered to show the "adjustments to the [plaintiff's] medical bills." Br. of Appellant at 9. The refused evidence consisted of an assortment of hospital and medical bills and statements of account revealing the amount of contractual write-offs resulting from the plaintiff's insurance coverage (Anthem Blue Cross Blue Shield) and the amounts actually paid in full satisfaction of the medical bills by Anthem. Appellant's App'x at 73-86. The plaintiff testified that he had paid the Anthem insurance premiums. *Id.* at 56.

The collateral source statute expressly declines to authorize the admission of evidence of payments in the form of "insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly." Ind. Code § 34-44-1-2(1)(B). The trial court's exclusion of the defendant's evidence in this case was thus consistent with the statutory requirements. The rule pronounced by today's opinion, which invites admission of "discounted amount[s] actually paid," Maj. slip op. at 2, seems diametrically opposed to the statute's clear and unequivocal language. Statutory modification or nullification is best left to the General Assembly.

I also dissent to express my disagreement with the majority's statement that the collateral source statute abrogated the common law collateral source rule. *Supra* at 4. The statute contains no words expressly abrogating the common law collateral source rule. Rather, the statute's precise language appears to create a limited exception to the common law rule, which is otherwise

left intact. From the statute's "the court shall allow" and "other than" language, I understand the statute merely to modify the common law rule to allow the admission of some collateral source payments but to deny this admission to life insurance, other death benefits, insurance benefits paid for by the plaintiff and the plaintiff's family, and government payments, thus leaving the common law rule in place as to these. The statute establishes a carefully crafted exception to the rule that narrowly allows only collateral source payments "other than" payments of benefits conferred from a plaintiff's own insurance or from government payments.

This interpretation of the collateral source statute seems conclusively governed by our well-established jurisprudence for determining the impact of a statute on existing common law:

> When the legislature enacts a statute in derogation of the common law, this Court presumes that the legislature is aware of the common law, and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication. In cases of doubt, a statute is construed as not changing the common law.

Bartrom v. Adjustment Bureau, Inc., 618 N.E.2d 1, 10 (Ind. 1993) (internal citations omitted). In line with this bedrock principle, this Court consistently construes statutes in derogation of the common law strictly and applies them narrowly in a variety of contexts. *See, e.g.*, Dunson v. Dunson, 769 N.E.2d 1120, 1124-25 (Ind. 2002); McKnight v. State, 658 N.E.2d 559, 562 (Ind. 1995); McQuade v. Draw Tite, Inc., 659 N.E.2d 1016, 1018 (Ind. 1995); Ind. State Highway Comm'n v. Morris, 528 N.E.2d 468, 473 (Ind. 1988); Loftus v. State, 222 Ind. 139, 143-44, 52 N.E.2d 488, 490 (1944).

Given the controversial and significant evidentiary issues involved in the collateral source rule and any modification thereof, I am convinced the General Assembly carefully balanced strongly asserted competing interests and crafted statutory language to reflect a legislative intent to delicately modify but not abrogate the common law rule.[2]

---

[2] There is unfortunate language in Shirley v. Russell, in which this Court unanimously but gratuitously commented that the collateral source statute "abrogated the common law collateral source rule." 663 N.E.2d 532, 534 (Ind. 1996). I am now convinced that this statement was both mistaken and unnecessary. Shirley involved a wrongful death action in which there was evidence that a decedent and his widow forewent a substantial portion of their pension in consideration of a survivor benefit. This Court found that the survivor annuity payment, "though perhaps not insurance for tax or regulatory purposes, has sufficient hallmarks of insurance to be deemed such for purposes of the new collateral source rule statute," and was therefore "not admissible in [the] estate's wrongful death claim." *Id.* at 536 (citing Ind. Code § 34-44-1-

As to the defendant's sole appellate claim that the trial court erroneously excluded his evidence of discounted payments for medical services, I believe that the trial court properly followed the collateral source statute and that the resulting judgment should be affirmed.

**Unfair and Undesirable Judicial Policy**

I also oppose the new rule because it is incomplete, misleading, and unfair, and will add layers of complexity, time, and expense to personal injury litigation, impairing the efficient administration of justice.

The majority acknowledges that the proper measure of medical expense damages for a personal injury plaintiff is the reasonable value of such expenses but concludes that the complexity currently surrounding the state of health care pricing systems[3] favors giving defendants new tools, namely the evidence of discounted payments for such services, to challenge the plaintiff's evidence of presumptively reasonable medical expenses under Indiana Evidence Rule 413.

The new rule fails to take into account, however, that these contractual discounts confer significant benefits upon medical service providers in addition to just the cash received in discounted payments. In exchange for medical services, providers receive not only the insurer's payments, but also the pecuniary value of numerous additional benefits, among which are prompt payment, assured collectability, avoidance of collection costs, increased administrative efficiency, and significant marketing advantages.

---

2(1)(B)). The application of the statute in <u>Shirley</u> is thus entirely consistent with the trial court's decision to exclude the discounted insurance benefit payments in the present case.

[3] The majority opinion, the concurrence, and this dissent discuss information from resources that are not part of the record of proceedings of this case. Indiana Code of Judicial Conduct Rule 2.9(C) declares that judges "shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." And Comment [6] explains that this prohibition "extends to information available in all mediums, including electronic." I understand this Rule's reference to the "facts in a matter" to mean the specific facts relating to the incident upon which a lawsuit is based, but that the Rule does not restrain appellate consideration of other general information helpful to the function of appellate courts in statutory interpretation and the advancement determination of common law.

4

It is widely recognized that, by agreeing to reduced rates, providers gain significant administrative and marketing advantages, "including a large volume of business, rapid payment, ease of collection, and occasionally advance deposits." Lawrence F. Wolper, Health Care Administration: Planning, Implementing, and Managing Organized Delivery Systems 553 (4th ed. 2004); *see also, e.g.*, Arnold Birenbaum, Managed Care: Made in America 22 (1997) ("[Discounting] guarantees the hospital that a certain number of beds will be occupied."); William O. Cleverley & Andrew E. Cameron, Essentials of Health Care Finance 301 (6th ed. 2006) (discounting attracts new blocks of patients); Steven R. Eastaugh, Health Care Finance: Economic Incentives and Productivity Enhancement 97 (2006) ("PPOs [preferred provider organizations] have an intuitive appeal as a mechanism for attracting fixed blocks of business. . . . Taking on PPO patients is analogous to taking credit card business in that you absorb the 3, 6, or 9 percent discounts in hopes of increasing the volume of new users to the hospital. . . . Generating new sources of revenues and new users of the hospital . . . is the desideratum."); Shahram Heshmat, Framework for Market-Based Hospital Pricing Decisions 10 (1993) ("In return for obtaining preferred status (which is designed to increase the volume of business), providers make their services more attractive to payers through means such as discounting . . . ."); Peter R. Kongstvedt, The Managed Health Care Handbook 32 (4th ed. 2001) ("[A] PPO may commit to pay all clean claims submitted by its providers within 15 days of submittal in return for a larger discount from charges."); Rockwell Schulz & Alton C. Johnson, Management of Hospitals and Health Services: Strategic Issues and Performance 40 (2003) ("The advantage to the [provider] in joining a PPO is access to more patients while retaining [a fee-for-service payment mechanism]."); Paul B. Ginsburg, *The Dynamics of Market-Level Change*, 22 J. Health Pol. Pol'y & L. 363, 371 (1997) ("Managed care plans have pursued a number of strategies," including "to take advantage of scale economies in marketing and administration, and to increase market power in relation to both purchasers and providers."); Robert J. Kulak, *Preferred Provider Organizations: On the Cutting Edge of Medical Delivery System Change*, 2 Benefits Q. 4, 4-5 (1986) (in return for agreeing to provide services at previously negotiated rates, "providers can expect an increase in their market share, prompt payment and a reduction of administrative detail").

Even the Amicus Defense Trial Counsel of Indiana, which supports the defendant in this

case, acknowledges that:

> Discounted fee arrangements between healthcare providers and insurers are for their mutual benefit. Providers "discount" from their "customary rate" for managed care patients for a reason – to be included on a list of preferred network providers from which the managed care plan members are permitted to obtain healthcare without prior approval from the insurance company. Thus, providers bargain for a large panel of patients who are, to some extent, directed to them by the insurance company in exchange for discounting or writing-off their "customary" rates. The insurance company essentially obtains a bulk discount on medical services for the plan members. The insurers pass their savings onto the plan members in the form of lower premiums, which helps them attract more customers, representing even more potential business for providers.

Br. of Amicus Curiae Defense Trial Counsel of Indiana in Supp. of Appellant's Pet. for Transfer at 9-10 (internal citation omitted).

As recognized by the Virginia Supreme Court, "amounts written off are as much of a benefit for which [the plaintiff] paid consideration as are the actual cash payments made by his health insurance carrier to the health care providers." Acuar v. Letourneau, 531 S.E.2d 316, 322 (Va. 2000).

The majority acknowledges that other jurisdictions "have considered this issue with varying results." *Supra* at 5. Other observers, however, have more precisely recognized "the clear majority view" as that which permits injured plaintiffs "to claim and recover the full amount of [their] reasonable medical expenses for which [they were] charged, *without any reduction for the amounts apparently written off by [their] healthcare providers* pursuant to contractually agreed-upon rates with [their] medical insurance carriers." Lopez v. Safeway Stores, Inc., 129 P.3d 487, 496 (Ariz. Ct. App. 2006) (emphasis added). Similarly, Professor Dobbs explains, "In line with the basic measure of damages—the reasonable value of the medical services rendered—most courts passing on the issue in recent years have made rulings that permit the plaintiff to prove all of the reasonable medical charges, *even though some of those charges were waived by the provider*."[4] 2 Dan B. Dobbs, The Law of Torts § 380, at 132-33 (2001 & supp. 2005) (emphasis

---

[4] The bulk of courts appear to agree that reduced payments under arrangements between a plaintiff's insurer and the medical service providers are not admissible as evidence of reasonableness of the medical services because they constitute a collateral source. Acuar v. Letourneau, 531 S.E.2d 316, 321-23 (Va. 2000); *see, e.g.*, Baptist Healthcare Sys., Inc. v. Miller, 177 S.W.3d 676, 683-84 (Ky. 2005); Onusko v.

added).  This dominant view comports with the fundamental purpose of the common law collateral source rule:  "to prevent a tortfeasor from deriving any benefit from compensation or indemnity that an injured party has received from a collateral source."  Acuar, 531 S.E.2d at 322.  "[T]he focal point of the collateral source rule is not whether an injured party has 'incurred' certain medical expenses.  Rather, it is whether a tort victim has received benefits from a collateral source that cannot be used to reduce the amount of damage owed by a tortfeasor."  *Id.*

Thus, if we authorize consideration of the amount of discounted payments as evidence of the reasonable value of a plaintiff's medical services, juries will receive a distorted, misleading, and incomplete picture unless they are also able to consider the pecuniary value of all the benefits conferred upon health care providers in their symbiotic exchange with medical insurers.  While today's new rule does not foreclose the admission of such essential evidence, its gathering and presentation will significantly burden both injured plaintiffs and efficient judicial administration.  A new level of discovery will be needed to determine and quantify the value to providers.  Plaintiffs will be required to expend considerable resources to marshal and present such evidence, thereby prolonging trials.  New appellate issues will result.  Not the least of these will be the challenge of devising a methodology to implement the majority's caveat that discounted amounts may be introduced only if done "without referencing insurance."  *Supra* at 2, 9.  Regardless of the technique used, it seems virtually impossible to deceive the common-sense inference of juries that insurance is the source of any discounted amounts paid to satisfy medical care accounts.

This all seems very unnecessary.  Under today's new rule, the existence and extent of any improvement to the accuracy of verdicts seems overwhelmed by the significant probability of incompleteness, confusion, and resulting unfairness, all further compounded by detrimental ef-

---

Kerr, 880 A.2d 1022, 1024-25 (Del. 2005); Bozeman v. Louisiana, 879 So.2d 692, 704-05 (La. 2004) (embracing this rule "for plaintiffs who have paid some consideration for the collateral source benefits"); Covington v. George, 597 S.E.2d 142, 144 (S.C. 2004); Hardi v. Mezzanotee, 818 A.2d 974, 985 (D.C. 2003); Wal-Mart Stores, Inc. v. Frierson, 818 So.2d 1135, 1139-40 (Miss. 2002); Koffman v. Leichtfuss, 630 N.W.2d 201, 209-10 (Wis. 2001); Montgomery Ward & Co. v. Anderson, 976 S.W.2d 382, 384-85 (Ark. 1998) (addressing gratuitous and discounted medical services); Goble v. Frohman, 848 So.2d 406, 410 (Fla. Dist. Ct. App. 2003); Olariu v. Marrero, 549 S.E.2d 121, 123 (Ga. Ct. App. 2001); Brown v. Van Noy, 879 S.W.2d 667, 676 (Mo. Ct. App. 1994).  *Cf.* Bynum v. Magno, 101 P.3d 1149, 1160-62 (Haw. 2004).

fects on the fair and efficient administration of justice. These negative aspects can easily be avoided, without sacrificing fairness and justice, by recognizing that when medical providers agree to accept discounted amounts, the extent of the discount presumably reflects the value of the tangible and intangible benefits the providers receive in return.

For these reasons, I favor adherence to the common law collateral source rule, as narrowly modified by Indiana's collateral source statute, both of which were properly applied by the trial court in this case.

**The Jury Instruction Correctly Stated the Law**

I also disagree with the majority's observation that it was improper to instruct the jury that "[s]tatements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury constitute prima [facie] evidence that the charges are reasonable and fair." *Supra* at 10. This instruction closely tracks Rule 413, which provides: "Statements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury are admissible into evidence. Such statements shall constitute prima facie evidence that the charges are reasonable." Ind. Evid. R. 413. I do not think a trial court errs by accurately instructing a jury as to what this Court's own rule establishes, especially when the record reflects no objection at trial by the defendant, when the defendant does not challenge the instruction on appeal, when the defendant agrees that the instruction accurately recited Rule 413, and when the defendant approvingly describes the instruction as "the proper measure of damages." *See* Br. of Appellant at 1, 6, 11.

**"Statements of Charges" in Evidence Rule 413**

Finally, to the extent the majority in its footnote 4 implies that "statements of charges" in Rule 413 are merely equivalent to "a financial account showing a balance due," I disagree. This Court mentioned this "[o]ne definition of 'statement'" only in passing when deciding that Rule 413 does not allow the admission of "future estimates of costs." Cook v. Whitsell-Sherman, 796 N.E.2d 271, 277 (Ind. 2003). Cook did not hold that Rule 413 allows admission of statements of

a remaining balance due after discounted payments, and such a holding would be inconsistent with Rule 413's purpose.

The measure of damages for medical services is not the actual expenses incurred, nor is it the actual amount paid for such services, but is instead the reasonable value of the medical services rendered. As we noted in Butler v. Indiana Department of Insurance:

> Under well-established principles of Indiana tort law, the extent of recovery by an injured plaintiff for medical expenses depends not upon what the plaintiff paid for such services but rather their reasonable value. Brosnan v. Sweetser, 127 Ind. 1, 9, 26 N.E. 555, 557 (1891); *see also* Penn. Co. v. Marion, 104 Ind. 239, 3 N.E. 874 (1885) (gratuitous medical services); City of Indianapolis v. Gaston, 58 Ind. 224 (Ind. 1877) (same); Herrick v. Sayler, 160 F. Supp. 25, 27-30 (N.D. Ind. 1958) (collecting cases and finding it "apparent that the law of Indiana will allow a plaintiff in a personal injury action to recover . . . the reasonable and fair value of medical expenses").

904 N.E.2d 198, 202 (Ind. 2009). Given that plaintiffs must prove the reasonableness and necessity of medical expenses, Rule 413 operates to simplify proof, obviating the expensive and time-consuming practice of calling witnesses to testify on issues that distract from principal matters at trial and substituting a statement of *charges* as prima facie proof of the reasonable value of medical service expenses. Cook, 796 N.E.2d at 277-78. I therefore disagree with the majority's implication that "statements of charges" in Evidence Rule 413 refers to a statement showing the balance due after receipt of an insurer's discounted payment pursuant to a pre-existing insurer-provider agreement.

## Conclusion

For the reasons expressed above, I dissent. But since the majority has chosen a new path, I find not unreasonable the procedural template implied and approved by the actual holding in today's majority opinion. The discounted medical expenses actually paid by the plaintiff's insurer are considered post-verdict, without the jury's general damage assessment having been contaminated with such information and the almost inevitable resulting implication that the plaintiff received insurance benefits. This avoidance of toxic evidence is parallel to the pro tanto post-verdict adjustment procedure we have approved when a plaintiff has received a pre-verdict partial settlement. *See, e.g.*, Morris, 528 N.E.2d at 473-74.

9

Rucker, J., concurs.